**EXHIBIT "1"**

Electronically Filed Superior Court of CA County of Contra Costa 12/2/2025 4:02 PM By: K. Whitworth, Deputy

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td><b>FOR COURT USE ONLY</b><br><i>(SOLO PARA USO DE LA CORTE)</i></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PHH MORTGAGE CORPORATION; AND, DOES 1 THROUGH 5, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
EULALIO L. SALVE JR.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Wakefield Taylor Courthouse <br><br> 725 Court Street Martinez, CA 94553 | CASE NUMBER: <br> *(Número del Caso):* C25-03534 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del demandante, o del demandante que no tiene abogado, es):*
EULALIO L. SALVE JR.; 1508 Cajon Ct, Antioch, CA 94509; Phone: (925) 501-6336 ; Email: tessiesalve@yahoo.com

| DATE: <br> *(Fecha)* 12/2/2025 4:02 PM | Clerk, by <br> *(Secretario)* /s/ K. Whitworth | , Deputy <br> *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*   PHH MORTGAGE CORPORATION
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

privacy, please press the Clear This Form button after y | Print this form | Save this form | Clear this form
Processed by Court on 12/3/2025 8:48 AM

Docusign Envelope ID: 67A21D43-09BC-45E7-BE8D-486AAAB6D42A

Electronically Filed Superior Court of CA County of Contra Costa 12/2/2025 4:02 PM By: K. Whitworth, Deputy

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| EULALIO L. SALVE JR.<br>1508 Cajon Ct, Antioch, CA 94509<br><br>TELEPHONE NO.: (925) 501-6336   FAX NO. :<br>EMAIL ADDRESS: tessiesalve@yahoo.com<br>ATTORNEY FOR (Name): PLAINTIFF IN PRO PER | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA |
|---|
| STREET ADDRESS: 725 Court Street |
| MAILING ADDRESS: 725 Court Street |
| CITY AND ZIP CODE: Martinez, CA 94553 |
| BRANCH NAME: Wakefield Taylor Courthouse |

| CASE NAME: |
|---|
| SALVE JR. vs. PHH MORTGAGE CORPORATION, et al. |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: C25-03534 |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [x] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action (specify): 20
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: NOVEMBER 25, 2025

EULALIO L. SALVE JR.
_____
(TYPE OR PRINT NAME)

► *Eulalio L. Salve Jr.*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET**<br>Processed by Court on 12/5/2025 8:46 AM | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

EXHIBIT "1"

Docusign Envelope ID: 67A21D43-09BC-45E7-BE8D-486AAAB6D42A

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability (not asbestos or toxic/environmental) (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (not civil harassment) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (not medical or legal)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)
    Contract/Warranty Breach–Seller Plaintiff (not fraud or negligence)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (not provisionally complex) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (not eminent domain, landlord/tenant, or foreclosure)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (arising from provisionally complex case type listed above) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (non-domestic relations)
    Sister State Judgment
    Administrative Agency Award (not unpaid taxes)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified above) (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-harassment)
    Mechanics Lien
    Other Commercial Complaint Case (non-tort/non-complex)
    Other Civil Complaint (non-tort/non-complex)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (not specified above) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

privacy, please press the Clear This Form button after y[  Print this form  ]  [  Save this form  ]        [  Clear this form  ]

EXHIBIT "1"
3 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Electronically Filed Superior Court of CA County of Contra Costa 12/2/2025 4:02 PM By: K. Whitworth, Deputy

1 | EULALIO L. SALVE JR.
1508 Cajon Ct
2 | Antioch, CA 94509
Phone: (925) 501-6336
3 | E-mail: tessiesalve@yahoo.com

4 | EULALIO L. SALVE JR.
5 | PLAINTIFF IN PRO PER

Per local Rule, This case is assigned to
Judge Douglas, Danielle K, for all purposes.

SUMMONS ISSUED

6

7 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF CONTRA COSTA**

8 | EULALIO L. SALVE JR.,                          ) CASE NO:   C25-03534
                                                )
9 |            Plaintiff,                         ) VERIFIED COMPLAINT FOR:
                                                )   1. **VIOLATION OF CALIFORNIA**
10 |            vs.                               )      **CIVIL CODE §2923.5**
                                                )   2. **VIOLATION OF CALIFORNIA**
11 | PHH MORTGAGE CORPORATION; AND,               )      **CIVIL CODE §2923.6;**
12 | DOES 1 THROUGH 5, INCLUSIVE,                 )   3. **VIOLATION OF CALIFORNIA**
                                                )      **CIVIL CODE §2923.7;**
13 |            Defendants                        )   4. **VIOLATION OF CALIFORNIA**
                                                )      **CIVIL CODE §2924.10**
14 |                                             )   5. **VIOLATION OF CALIFORNIA**
                                                )      **CIVIL CODE §2924.11**
15 |                                             )   6. **VIOLATION OF CALIFORNIA**
                                                )      **CIVIL CODE §2924.17;**
16 |                                             )   7. **BREACH OF CONTRACT;**
                                                )   8. **BREACH OF COVENANT OF**
17 |                                             )      **GOOD AND FAIR DEALING;**
                                                )   9. **PROMISSORY ESTOPPEL;**
18 |                                             )  10. **EQUITABLE ESTOPPEL;**
                                                )  11. **FRAUDULENT**
19 |                                             )      **MISREPRESENTATION;**
                                                )  12. **NEGLIGENT**
20 |                                             )      **MISREPRESENTATION;**
                                                )  13. **FRAUDULENT PROMISE**
21 |                                             )      **WITHOUT INTENTION TO**
                                                )      **PERFORM;**
22 |                                             )  14. **FRAUDULENT**
                                                )      **CONCEALMENT;**
23 |                                             )  15. **ELDER ABUSE;**
                                                )  16. **QUIET TITLE;**
24 |                                             )  17. **SLANDER OF TITLE;**
25 |                                             )

VERIFIED COMPLAINT
**1** OF **71**
Processed by Court on 12/5/2025 8:46 AM

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

|   |   |
|---|---|
| 1 | ) 18. VIOLATION OF BUSINESS & |
| | ) PROFESSIONS CODE § 17200, |
| 2 | ) ET AL. |
| | ) 19. VIOLATION OF THE |
| 3 | ) ROSENTHAL FAIR DEBT |
| | ) COLLECTION PRACTICES |
| 4 | ) ACT |
| | ) 20. WRONGFUL FORECLOSURE; |
| 5 | ) |
| | ) DEMAND FOR JURY TRIAL |
| 6 | ) |

Plaintiff, EULALIO L. SALVE JR. (hereinafter referred to as "Plaintiff") alleges herein as follows:

## I.    PARTIES

1. At all times material to this Verified Complaint (hereinafter referred to as "Complaint"), EULALIO L. SALVE JR. ("Plaintiff") is a resident of the County of Contra Costa, in the State of California.

2. Plaintiff alleges upon information and belief that Defendants, PHH MORTGAGE CORPORATION ("PHH"), and DOES 1 through 5, inclusive and each of them, were at all times relevant herein doing business in the County of Contra Costa, State of California.

3. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 5, inclusive, is unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein, as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiff. At such time as Plaintiff learns the true name and capacity of any

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Defendants named as a DOE herein, Plaintiff will amend the complaint to identify said Defendants(s), and include accompanying charging allegations.

4.  Agency: Plaintiff is informed and believe and thereon alleges that, at all times herein mentioned each of the Defendants sued herein was the agent and employee of each of the remaining Defendants. Plaintiff alleges that each and every Defendants alleged herein ratified the conduct of each and every other Defendants. Plaintiff further alleges that at all times said Defendants were acting within the purpose and scope of such agency and employment.

## II.    JURISDICTION AND VENUE

5.  Jurisdiction: This Court has jurisdiction over this action because it involves real property in the State of California, more specifically, in the County of Contra Costa, which is sufficient to establish "minimum contacts" over the Defendants. In addition, the amount in controversy exceeds the sum or value of $25,000.00. Alternatively, jurisdiction is proper because Defendants transact business within the State of California, regularly service and enforce mortgage loans secured by California real property, and engaged in the acts and omissions complained of herein within this State, including issuing, mailing, recording, and enforcing foreclosure-related documents affecting the SUBJECT PROPERTY.

6.  Venue: Plaintiff further alleges that the SUBJECT PROPERTY, as more specifically alleges hereinafter, is located within the County of Contra Costa, in the State of California, and that as such this Court is the proper venue. Alternatively, venue is proper under Code of Civil Procedure § 395(b) because:

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

a.  Plaintiff resided in Contra Costa County at the time the underlying loan transaction was entered into;

b.  Plaintiff resides in Contra Costa County at the commencement of this action;

c.  Defendants directed and carried out the wrongful acts, notices, communications, misrepresentations, and foreclosure activity complained of herein into this County; and

d.  The agreement was breached, and the harm occurred, within this County.

Accordingly, the Superior Court of California, County of Contra Costa, is the proper venue for this action.

## III.  GENERAL ALLEGATIONS

7.  SUBJECT PROPERTY: At all times material to this complaint, Plaintiff was the lawful owner of certain residential real property located at 1508 Cajon Ct, Antioch, CA 94509 ("SUBJECT PROPERTY").

8.  Primary Residence: The SUBJECT PROPERTY is/was Plaintiffs' primary residence and is/was owner occupied at all relevant times material to this Verified Complaint.

9.  Senior Citizens: Plaintiff is over the age of 65.

10. RECORDED DOCUMENTS:

a.  Deed of Trust Recitals: On or about July 27, 2006, Plaintiff entered into a Deed of Trust (hereinafter "DOT") with lender in the total sum of Four Hundred Twenty Thousand Dollars ($420,000.00) ("SUBJECT LOAN"). The DOT named GREENPOINT MORTGAGE FUNDING, INC. as the Lender; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as the Beneficiary; MARIN CONVEYANCING CORP. as the Trustee; and Plaintiff as the Borrower. The DOT

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

1   was recorded on August 3, 2006, as Instrument Number 2006-0245490-00. A true

2   and correct copy of the DOT is attached hereto as *Exhibit A* and incorporated herein

3   by this reference.

4       b.   Assignment: On or about June 16, 2022, authorized representative YANIQUE A

5   ATKINSON EDWARDS of MORTGAGE ELECTRONIC REGISTRATION

6   SYSTEMS, INC. executed an Assignment whereby MORTGAGE ELECTRONIC

7   REGISTRATION SYSTEMS, INC. assigned the DOT to U.S. BANK NATIONAL

8   ASSOCIATION. The Assignment was recorded on June 22, 2022, as Instrument

9   Number 2022-0102283. A true and correct copy of this Assignment is attached

10  hereto as *Exhibit B* and incorporated herein by this reference.

11      c.   Notice of Default ("NOD"): On or about September 23, 2024, SAUNDRA WHITE,

12  an authorized representative of WESTERN PROGRESSIVE, LLC, executed a

13  Notice of Default (hereinafter referred to as "NOD"). The NOD was recorded on

14  September 24, 2024, as Instrument Number 2024-0093893. A true and correct copy

15  of the NOD is attached hereto as *Exhibit C* and incorporated herein by this reference.

16         i.   Declaration Invalid: The Declaration of Compliance is false and

17  fraudulent in that no individual advised Plaintiff as to his right to an in

18  person meeting within 14 days.

19        ii.   Breach of Paragraph 22 of Deed of Trust: Defendants materially breached

20  the Deed of Trust by failing to provide Plaintiff with notice of her right to

21  bring a lawsuit to allege defenses to the acceleration and sale. Specifically,

22  Paragraph 22 of the Deed of Trust states the following: "Notice of Default.

23  Lender shall give notice to Borrower prior to acceleration following

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Borrower's breach of any covenant or agreement in this Security Instrument but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** (Emphasis added). Please see Paragraph 22 of *Exhibit A* attached hereto and incorporated herein by this reference.

 iii. <u>NOD is Fraudulent</u>: Rather, the NOD fraudulently states: "Following the expiration of the time period referred to in the first paragraph of this notice… **you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor**." (Emphasis added). Please see *Exhibit C* attached hereto and incorporated herein by this reference. The NOD is thus facially fraudulent, since Plaintiff's only legal right to stop the sale is not by payment only, as Defendants were required to provide Plaintiff with notice of his right to bring a court action to challenge the default as dictated by Paragraph 22 of the DOT.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

d.  Notice of Trustee Sale ("NOTS"): On or about February 25, 2025, MARK BOMBICK, an authorized representative of WESTERN PROGRESSIVE, LLC, executed a NOTS scheduling a sale of the SUBJECT PROPERTY for April 10, 2025. The NOTS was recorded on February 27, 2025, as Instrument Number 2025-0018066. A true and correct copy of the NOTS is attached hereto as **Exhibit D** and incorporated herein by this reference.

e.  Trustee's Deed Upon Sale ("TDUS"): On or about November 5, 2025, authorized representative DELIA MADRID executed a Trustee's Deed Upon Sale ("TDUS"), indicating that the SUBJECT PROPERTY was sold at an auction on October 15, 2025 to U.S. BANK NATIONAL ASSOCIATION. The TDUS was recorded on November 6, 2025, as instrument number 2025-0125494. A true and correct copy of the TDUS is attached hereto as **Exhibit E** and incorporated herein by this reference.

11. STATEMENT OF FACTS:

a.  On or about July 28, 2006, Plaintiff entered into a DOT securing a loan in the principal amount of Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00), in favor of GREENPOINT MORTGAGE FUNDING, INC. The DOT identified GREENPOINT MORTGAGE FUNDING, INC. as the lender, MARIN CONVEYANCING CORP. as the trustee, MERS as the beneficiary, and Plaintiff as the borrower, encumbering the SUBJECT PROPERTY.

b.  Sometime in August 2022, Plaintiff, with the assistance of his daughter MICHELLE SALVE ("Michelle"), submitted a loan modification application to the loan servicer, Defendants PHH including bank statements, income documentation, and other documents requested by said Defendants.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

c.  In or about November 2022, Defendants PHH advised Plaintiff that, although the documents had been received, the modification review process would require an additional thirty (30) to sixty (60) days.

d.  Throughout 2023, Plaintiff continued to communicate with Defendants PHH regarding the status of the loan modification. Defendants PHH rejected the application on the basis of incomplete documentation. When Plaintiff resubmitted the application and requested clarification, Defendants PHH asserted that the application had not been received or that the required documents were incomplete.

e.  Plaintiff attempted to remit partial payments from June 2023 through August 2023 to avoid falling into default; however, Defendants PHH rejected such payments without explanation.

f.  On November 2, 2023, Defendants PHH issued a delinquency notice demanding full payment of arrears. Plaintiff continued to provide documentation for modification review and consistently followed up, and was repeatedly told that the application remained under review.

g.  Around August 2024, Defendants PHH denied the subsequent modification application for alleged insufficient income and demanded that all household members' income be included.

h.  At that point, Plaintiff, having repeatedly attempted to comply with Defendants PHH's document requests and having suffered multiple denials, retained the assistance of a loss mitigation company in order to ensure that Plaintiff was fulfilling all requirements correctly. Plaintiff further alleges that the DOT contains no integration or merger clause and therefore does not state that it constitutes the entire

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

agreement between the parties, permitting consideration of the oral representations and assurances repeatedly made by Defendants throughout the loan modification and foreclosure process.

i.   On September 24, 2024, a NOD was recorded but the Plaintiff did not receive a copy of this notice.

j.   With the assistance of the loss mitigation company, Plaintiff appealed the denial of the loan modification.

k.   On February 27, 2025, Defendants PHH recorded and mailed a NOTS, scheduling a foreclosure sale for April 10, 2025, notwithstanding active modification negotiations. The pending appeal resulted in a temporary hold of the sale.

l.   On March 28, 2025, Defendants PHH required Plaintiff to submit a new modification application. On April 24, 2025, Defendants PHH approved the application conditioned upon Plaintiff making trial payments from May through August 2025 in the amount of Two Thousand Five Hundred Seven Dollars and Twenty-One Cents ($2,507.21) per month.

m.   Plaintiff made all required trial payments. On July 30, 2025, Defendants PHH issued the final modification agreement, requiring Plaintiff to return the signed and notarized documents by August 10, 2025. Plaintiff mailed the signed agreement on August 9, 2025.

n.   On August 22, 2025, Defendants PHH rejected the signed agreement solely because Plaintiff had written a handwritten notation referencing California relief benefits. Defendants PHH instructed Plaintiff not to add any comments to the document.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

o. On August 27, 2025, Defendants PHH stated that new final modification documents had been mailed and were required to be returned by September 6, 2025. Plaintiff did not receive said documents by mail. Upon notification, the loss mitigation representative emailed copies to Michelle on September 5, 2025.

p. Due to the insufficient amount of time, Plaintiff returned the notarized documents on September 10, 2025. Defendants PHH denied the modification on the basis that the documents were not returned by the deadline.

q. Plaintiff appealed the denial, and Defendants PHH confirmed receipt of the appeal.

r. On October 9, 2025, Plaintiff was advised that the foreclosure sale had been rescheduled to October 15, 2025. Defendants PHH assured Plaintiff that the sale was placed on hold pending appeal review.

s. On October 17, 2025, Plaintiff received a delinquency notice asserting that the account had been past due since July 1, 2024, and reflected arrears from May 2025 through August 2025 despite Plaintiff having made all required trial payments.

t. On October 27, 2025, Plaintiff was informed by the loss mitigation company that Defendants PHH proceeded with the foreclosure sale on October 15, 2025, while the loan modification appeal remained pending.

12. <u>Invalid Trustee Sale Already Took Place</u>: An invalid trustee sale took place on or about October 15, 2025. Please see ***Exhibit E*** attached hereto and incorporated herein by this reference.

13. <u>No Bona Fide Third-Party Purchaser</u>: Review of the TDUS will evidence that the Grantee was the foreclosing beneficiary and that as such there is no third-party bona fide purchaser.

EXHIBIT "1"
13 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Accordingly, any conclusive presumptions pertaining to third party purchasers are not applicable.

14. <u>TENDER</u>: Several courts have recognized a general equitable exception to applying the tender rule where "it would be inequitable to do so." *Onofrio v. Rice*, 55 Cal. App. 4th 413.424 (1997) ("[w]whatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale"); *Robinson v. Bank of America*, 12-CV-00494-RMW, 2012WL, 1932842 at 3 (N.D. Cal. May 29, 2012) (inequitable to apply tender rule in certain circumstances); *Bowe v. Am. Mortg. Network, Inc.*, CV 11-08381 DDP SHX, 2012 WL 2071759, at 2 (C.D. Cal. June 8, 2012); *Giannini v. American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at 3 (N.D. Cal. Feb.1, 2012).

a. Plaintiff alleges that one or more of the following exceptions to the tender requirement apply herein: (A) the value of Plaintiff's monetary claims and set-offs against the beneficiary are equal to or greater than the value of the secured debt thereby entitling Plaintiff to monetary damages that will far exceed the secured debt; (B) it would be inequitable to impose a tender requirement on Plaintiff under the circumstances, since the foreclosure proceeded pursuant to blatantly fraudulent and unlawful conduct in direct violation of the Civil Code; and, (C) Plaintiff do not rely on equity to challenge the foreclosure, as the foreclosure is statutorily void for failure to comply with the stringent civil code requirements necessary to conduct a non-judicial foreclosure.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

b. Plaintiff alleges that, if necessary, they are willing and able to tender an amount deemed necessary by this Court in order to proceed with their claims against Defendants.

c. <u>Trustee is Agent of Defendants and Defendants Approved and Ratified Trustee's Conduct:</u> Specifically, Plaintiff alleges that any document executed by the trustee or any communication with the trustee was ratified and approved by Defendants, as the trustee was acting as an agent for the Defendants. Accordingly, Defendants is responsible for any wrongful conduct demonstrated by the trustee, including but not limited to executing invalid documents necessary to proceed with foreclosure. The body of the complaint (except the headings, should be double-spaced)

15. <u>Allegations as References to Previous Paragraphs:</u> In order to avoid unnecessarily lengthening the Complaint, Plaintiff may state allegations within the body of each Cause of Action as a reference to previously alleged paragraphs.

## IV.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE §2923.5
### (Against ALL Defendants)

16. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

17. <u>Statute:</u> California Civil Code § 2923.5 states the following: "(a)(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until both of the following: (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e). (B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete

---

VERIFIED COMPLAINT
12 OF 71

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

application as defined in subdivision (d) of Section 2924.18. (2) **A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.** The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically." (Emphasis added.)

18. <u>Violations</u>: Defendants, and DOES 1 through 5, inclusive, and each of them, violated California Civil Code § 2923.5 by failing to contact Plaintiff in person or by telephone to assess his financial situation and discuss options to avoid foreclosure prior to recording the NOD. Most importantly, no one advised Plaintiff she had the right to request an in-person meeting within 14 days, which Plaintiff clearly would have done to address the options to avoid foreclosure. Plaintiff was never advised of his statutory right to request an in-person or telephonic meeting within 14 days, despite Plaintiff having submitted multiple loan modification applications and actively seeking mortgage assistance. Instead, Plaintiff only learned of available relief options through independent efforts and communications with third-party entities. If Plaintiff did not have the initiative to seek foreclosure prevention options, Plaintiff would not have known that he had available options to avoid foreclosure.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Defendants' conduct directly prevented Plaintiff from exercising his statutory rights under Civil Code § 2923.5.

19. <u>Prejudice</u>: Clearly, Plaintiff suffered prejudice as a direct result of Defendants' failure to comply with Civil Code § 2923.5. Plaintiff was prejudiced by the failure to be provided with an in-person meeting or to have a competent individual actually assess what was taking place regarding the SUBJECT LOAN and discuss alternatives to foreclosure. Defendants' improper actions caused Plaintiff unnecessary financial stress, confusion, and permanent loss of the SUBJECT PROPERTY and associated equity.

20. <u>Failure to Remedy</u>: Clearly, Defendants failed to comply with the stringent yet patently lucid requirements of the California Civil Code and clearly, they have not "remedied" their wrongful conduct.

21. <u>Injunctive Relief</u>: Due to Defendants' non-compliance with Civil Code Section 2923.5, Plaintiff is likely to succeed in Plaintiff's claim for relief. Plaintiff seeks injunctive relief preventing Defendants from selling or transferring her interest in the SUBJECT PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT PROPERTY and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendants if the foreclosure process is reinitiated following the conclusion of the subject litigation, is transitory and minimal. Plaintiff is entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

///

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE §2923.6**
**(Against ALL Defendants)**

22. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

23. Statute: According to Cal. Civ. Code § 2923.6, "(b) It is the intent of the Legislature that the mortgage servicer offers the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority. (c) **If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.** A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired. (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification. (d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error. **(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

**or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:** (1) Thirty-one days after the borrower is notified in writing of the denial. **(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the** appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer. (f) **Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following: (1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.** (2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance. (3) **If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.** (4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan. (5) **If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options.** If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative." (Emphasis added.)

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

24. <u>Violation</u>: Pursuant to California Civil Code § 2923.6, Defendants were contractually and statutorily obligated to provide Plaintiff with an opportunity to apply for a loan modification or other mortgage relief if they believed the SUBJECT LOAN was in default, and to refrain from recording a Notice of Default or Notice of Trustee's Sale, or conducting a trustee's sale, while Plaintiff's complete first lien loan modification application or its appeal was pending. Defendants, as the lender and servicer of the SUBJECT LOAN, failed to comply with these duties. Specifically:

    a.  Defendants denied Plaintiff's loan modification applications in 2023 and 2024 without issuing the written denial notices required by Civil Code § 2923.6(f), which must state the specific reasons for the denial and the borrower's right to appeal. Because no written notice was provided, Plaintiff was not informed of the basis for the denial, was not advised of his right to appeal, and was not notified of the steps or deadlines required to perfect such appeal. This omission deprived Plaintiff of any meaningful opportunity to challenge the denial or pursue available foreclosure-prevention options. The absence of written notice also prevented Plaintiff from understanding what additional information, if any, was required to cure any alleged deficiencies and avoid foreclosure.

    b.  Defendants recorded a NOD on September 24, 2024, during a period when Plaintiff had disputed and appealed the denial of his loan modification. Despite Plaintiff's continued submission of documentation and his ongoing efforts to pursue loss mitigation, Defendants proceeded to record and mail a NOTS on February 27, 2025, while Plaintiff's appeal of the modification denial remained unresolved and under active review. These actions violated Civil Code § 2923.6(e), which expressly

EXHIBIT "1"
20 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

prohibits a servicer from recording a Notice of Default, recording a Notice of Trustee's Sale, or conducting a trustee's sale while a borrower's appeal of a loan modification denial is pending. By recording both the NOD and NOTS before the appeal was resolved, Defendants engaged in prohibited dual tracking and directly violated § 2923.6(e)(2).

    c.  Defendants further violated § 2923.6(e) by proceeding with the foreclosure sale on October 15, 2025, despite previously representing to Plaintiff on October 9, 2025 that the sale had been placed on hold pending the outcome of his appeal. Plaintiff's appeal had been timely submitted, received, and acknowledged by Defendants. Proceeding with the trustee's sale while the appeal remained active constitutes an additional act of prohibited dual tracking and a direct violation of Defendants' statutory obligations under § 2923.6(e).

25. <u>No Allegations that Defendants was Required to Provide a Modification</u>: Plaintiff is not alleging that Defendants was required to provide a loan modification. However, Defendants was required to comply with applicable HBOR statutes, including refraining from proceeding with foreclosure procedures such as recording a NOD and NOTS, scheduling a trustee sale, conducting a trustee sale, and adding fees, costs and interest related to such unlawful foreclosure proceedings while Plaintiff was in review for a loan modification. Moreover, to the extent Defendants are denying the loan modification, they should provide a reason for such denial so Plaintiff and other borrowers can better understand the basis upon which they are being deprived of the only opportunity to save his home.

26. <u>Prejudice</u>: As a result of Defendants' failure to comply with Cal. Civ. Code § 2923.6, Plaintiff suffered prejudice. (1) Plaintiff was forced into the foreclosure process without

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

being provided with an opportunity to apply for a loss mitigation alternative. (2) Plaintiff was forced into the foreclosure process despite submitting a complete loan modification application on a timely basis. Defendants added fees, costs and interest to Plaintiff's account related to and resulting from the unlawful foreclosure documents. Moreover, Defendants did not properly review Plaintiff for a loan modification, provide him with any written notice of determination of his applications and appeals prior to recording the NOD and NOTS. Plaintiff's application and appeals were pending resolution and determination when Defendants recorded foreclosure documents including a Notice of Default and Notice of Trustee Sale, and continued to inflate the balance with fees, penalties, interest and costs. Had Defendants complied with the requirements of Cal. Civ. Code § 2923.6, Plaintiff would not have been inappropriately subjected to the foreclosure process.

27. <u>Injunctive Relief</u>: Due to Defendants' non-compliance with Civil Code Section 2923.6, Plaintiff is likely to succeed in Plaintiff's claim for relief. Plaintiff seeks injunctive relief preventing Defendants from selling or transferring his interest in the SUBJECT PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT PROPERTY and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendants if the foreclosure process is reinitiated following the conclusion of the subject litigation, is transitory and minimal. Plaintiff is entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

///

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE § 2923.7**
**(Against ALL Defendants)**

28. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

29. Cal. Civ. Code § 2923.7: As of January 1, 2013, Defendants were required under Cal. Civ. Code § 2923.7 to provide Plaintiff with a Single Point of Contact (hereinafter referred to as "SPOC") with respect to their loss mitigation application(s). Plaintiff requested a SPOC to be assigned to manage Plaintiffs' loss mitigation application, but were not provided with a single individual as requested, either by letter correspondence or telephone.

30. Violation: Plaintiff was forced to communicate with a number of various different individuals who provided Plaintiff with conflicting information, failed to take lawfully required countermeasures to prevent Plaintiff from being subjected to the foreclosure process, and who were generally not capable of reasonably performing their duties as agent for lender. Although Defendants are entitled to provide Plaintiff with a "team" of contacts, every member of this team must be knowledgeable about Plaintiffs' loss mitigation application and appeals and Plaintiffs' specific circumstances, which in this case Defendants very clearly failed to do.

   a.  Defendants never provided Plaintiff or their representative(s) with an actual SPOC that was responsive, available, reachable by a dedicated phone number, and knowledgeable about Plaintiffs' loan modification application(s), forcing Plaintiff to maneuver themselves through a labyrinth of automated operators to reach a different representative for Defendants every time they called to check the status of Plaintiffs' application and receive relevant information. These different individuals provided

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Plaintiff with conflicting, incomplete information, and did not have specific knowledge of Plaintiffs' application(s) or the status of the foreclosure proceedings.

b.  Plaintiff began submitting his loan modification application and supporting documents as early as August 2022, yet Defendants did not inform him until well into 2023 that his application was allegedly "incomplete." Throughout this period, Plaintiff was repeatedly required to resubmit the same documents, was given inconsistent instructions, and received conflicting statements regarding whether his application had been received or was under review.

31. Prejudice: As the result of Defendants' failures to comply with Cal. Civ. Code § 2923.7, Plaintiff have been subjected to the foreclosure process and have been forced to incur substantial sums in fees, interest and cost, resulting from the delay in processing Plaintiffs' loss mitigation application, which in turn results from the fact that Defendants continuously request the same documents in support of Plaintiffs' application. This verifies that there is no SPOC who clearly would have realized that the documents had already been received. In fact, the entire purpose of this specific statute is for homeowners applying for a loss mitigation alternative to have a single representative familiar with their case who can ensure that borrowers are not subject to the foreclosure process while Plaintiff is in active loss mitigation review. The above-referenced prejudicial actions have resulted in Plaintiff potentially losing title to the SUBJECT PROPERTY and/or losing title to the SUBJECT PROPERTY, being subject to potential eviction, and incurring further interest, fees and costs to the benefit of Defendants, and each of them.

32. Injunctive Relief: Due to Defendants' non-compliance with Civil Code Section 2923.7, Plaintiff is likely to succeed in Plaintiffs' claim for relief. Plaintiff seek injunctive relief

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

1    preventing Defendants from selling or transferring their interest in the SUBJECT

2    PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT

3    PROPERTY and equity is lost as a result of a trustee sale is permanent and severe; whereas

4    the hardship incurred by Defendants if the foreclosure process is reinitiated following the

5    conclusion of the subject litigation, is transitory and minimal. Plaintiff is entitled to such

6    relief as set forth in this Cause of Action including any statutory relief, and such further

7    relief as is set forth below in the section captioned Prayer for Relief which is by this

8    reference incorporated.

9

**FOURTH CAUSE OF ACTION**
**FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2924.10**
**(Against ALL Defendants)**

10

11

12    33. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the

13    aforementioned Paragraphs as if fully set forth herein.

14    34. <u>C.C.C. § 2924.10 Requirements</u>: Cal. Civ. Code § 2924.10 states the following in pertinent

15    part: **"(a) When a borrower submits a complete first lien modification application or**

16    **any document in connection with a first lien modification application, the mortgage**

17    **servicer shall provide written acknowledgment of the receipt of the documentation**

18    **within five business days of receipt. In its initial acknowledgment of receipt of the loan**

19    **modification application**, the mortgage servicer shall include the following information:

20    (1) A description of the loan modification process, including an estimate of when a decision

21    on the loan modification will be made after a complete application has been submitted by

22    the borrower and the length of time the borrower will have to consider an offer of a loan

23    modification or other foreclosure prevention alternative. (2) Any deadlines, including

24    deadlines to submit missing documentation, that would affect the processing of a first lien

25

---

VERIFIED COMPLAINT
**22** OF **71**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

loan modification application. (3) Any expiration dates for submitted documents. (4) Any deficiency in the borrower's first lien loan modification application." (Emphasis added.)

35. Material Violation of Section 2924.10: Defendants violated Cal. Civ. Code § 2924.10 by failing to timely provide Plaintiff with written acknowledgment of receipt of her loan modification application or any of the required information specified in the statute. Section 2924.10 requires a mortgage servicer, upon receipt of a borrower's loan modification application or any document in connection with a first lien modification application, to provide a written acknowledgment within five business days that explains the loan modification process, identifies deadlines, specifies any deficiencies, and provides expiration dates for submitted documents. However, Defendants wholly disregarded these obligations and instead advanced foreclosure proceedings without affording Plaintiff her statutory rights. Specifically, Plaintiff began submitting documentation for his loan modification application as early as August 2022, and again resubmitted documents throughout 2023, yet Defendants never issued the required written acknowledgment of receipt within five business days of any submission. Defendants failed to provide any written description of the review process, any estimated timelines for a decision, any deadlines for completing his application, any notice of alleged deficiencies, or any expiration dates for documents previously submitted. As a result, Plaintiff was left without guidance as to the status of his application, the steps needed to cure any alleged issues, or the timeframe in which his application would be evaluated, all while Defendants continued to move forward with foreclosure activity in violation of § 2924.10.

36. Prejudice: As a result of Defendants' failure to comply with Cal. Civ. Code § 2924.10, Plaintiff suffered prejudice. Plaintiff was left uncertain as to whether her application was

EXHIBIT "1"
26 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

being processed or reviewed. Defendants' failure to acknowledge receipt of the application deprived Plaintiff of the opportunity to timely cure any deficiencies, participate in the modification process, or obtain available foreclosure-prevention alternatives. This failure deprived Plaintiff of the transparency, process, and opportunity guaranteed under California law, and instead, Defendants proceeded to schedule the foreclosure sale of the SUBJECT PROPERTY for October 15, 2025.

37. Damages: As a direct and proximate result of Defendants' violation of Civil Code § 2924.10, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in an amount to be determined according to proof at trial.

38. Injunctive Relief: Due to Defendants' non-compliance with Civil Code Section 2924.10, Plaintiff is likely to succeed in Plaintiff's claim for relief. Plaintiff seeks injunctive relief preventing Defendants from selling or transferring her interest in the SUBJECT PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT PROPERTY and equity are lost as a result of the trustee sale is permanent and severe; whereas the hardship incurred by Defendants if the foreclosure sale is set aside is transitory and minimal. Plaintiff is entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE § 2924.11
### (Against ALL Defendants)

39. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

40. <u>C.C.C. § 2924.11 Requirements</u>: Cal. Civ. Code § 2924.11 states the following in pertinent part: "(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances: (1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan. (2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer. (b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances: (1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan. (2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer. (c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower. (d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the cancellation of the pending

EXHIBIT "1"
28 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent. **(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative. (f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.** (g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section." (Emphasis added.)

41. <u>Material Violation of Section 2924.11</u>: Defendants materially violated California Civil Code § 2924.11 by continuing to assess, impose, and failing to suspend fees, costs, and interest while Plaintiff's complete loan modification applications, trial plan, and later appeal were pending. Specifically, from August 2022 through the approval and trial period in 2025, Plaintiff submitted multiple loan modification applications, made all required trial payments from May through August 2025, and timely filed an appeal of the denial. During this time, Defendants continued to allow fees, charges, and interest to accrue on the SUBJECT LOAN, in direct violation of § 2924.11(e)–(f). Moreover, Defendants continued foreclosure activities, including recording a NOD and NOTS, and scheduling a Trustee's Sale for

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

October 15, 2025, despite Plaintiff's timely and complete submissions, thereby compounding the prohibited charges and further prejudicing Plaintiff.

42. <u>Prejudice</u>: As a result of Defendants' failure to comply with Cal. Civ. Code § 2924.11, Plaintiff suffered prejudice. Plaintiff incurred unlawful fees and interest, was subjected to unnecessary financial obligations and stress, was placed at risk of losing the SUBJECT PROPERTY without proper consideration of her loss mitigation applications, and suffered emotional distress and the risk of permanent loss of her home.

43. <u>Damages</u>: As a direct and proximate result of Defendants' violation of Civil Code Section 2924.11, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in an amount to be determined according to proof at trial.

44. <u>Injunctive Relief</u>: Due to Defendants' non-compliance with Civil Code Section 2924.11, Plaintiff is likely to succeed in Plaintiff's claim for relief. Plaintiff seeks injunctive relief preventing Defendants from selling or transferring her interest in the SUBJECT PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT PROPERTY and equity are lost as a result of the trustee sale is permanent and severe, whereas the hardship incurred by Defendants if the foreclosure sale is set aside is transitory and minimal. Plaintiff is entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

<div align="center">

**SIXTH CAUSE OF ACTION**
**FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17**
**(Against ALL Defendants)**

</div>

45. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

<div align="center">

VERIFIED COMPLAINT
**27** OF **71**

</div>

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

46. <u>C.C.C. Section 2924.17 Requirements</u>: California Civil Code Section 2924.17 states the following in pertinent part: (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence. (b) **Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.** (Emphasis added.)

47. <u>Material Violation of 2924.17</u>: Defendants violated Cal. Civ. Code § 2924.17 by recording a NOD, NOTS, and related foreclosure documents without reviewing or ensuring the accuracy of Plaintiff's loan status or the completeness of his submitted loss mitigation applications, and without verifying whether Defendants had the right to foreclose pursuant to competent and reliable evidence. Specifically, Defendants executed and recorded a NOD and NOTS without reviewing or verifying Plaintiff's loan information, account status, or eligibility for foreclosure prevention alternatives, despite Plaintiff having submitted multiple complete loan modification applications with all requested documentation well before the notices were recorded. As a result, Defendants proceeded with the foreclosure sale, and Plaintiff lost the SUBJECT PROPERTY without proper review or verification of competent and reliable evidence, in direct violation of § 2924.17. Defendants' documents

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

were therefore inaccurate, incomplete, and unsupported by competent and reliable evidence, as required by the statute.

48. Prejudice: As a result of Defendants' failures to comply with Cal. Civ. Code § 2924.17, Plaintiff has already lost title to the SUBJECT PROPERTY. These actions have caused Plaintiff permanent harm, including loss of ownership and equity in the SUBJECT PROPERTY, exposure to potential eviction, and the imposition of additional interest, fees, and costs to the benefit of Defendants. Plaintiff has been denied the protections and rights afforded under the statute, and the foreclosure has resulted in irreparable financial and personal detriment.

49. Damages: As a direct and proximate result of Defendants' violation of Civil Code § 2924.17, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in an amount to be determined according to proof at trial.

50. Injunctive Relief: Due to Defendants' non-compliance with Civil Code Section 2924.17, Plaintiff is likely to succeed in Plaintiffs' claim for relief. Plaintiff seek injunctive relief preventing Defendants from selling or transferring their interest in the SUBJECT PROPERTY to another party. The hardship incurred by Plaintiff if the SUBJECT PROPERTY and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendants if the foreclosure process is reinitiated following the conclusion of the subject litigation, is transitory and minimal. Plaintiff is entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

## SEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against ALL Defendants)

51. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

52. Written Agreement – Deed of Trust: Please see Paragraph 10 and *Exhibit A*, incorporated herein by this reference.

53. Plaintiff alleges a Written Agreement with Defendants: Subsequent to entering into the Deed of Trust, Plaintiff alleges that Defendants was assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiff have an agreement with at least one of the above-referenced Defendants, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other. It is pursuant to this agreement that Defendants have collected monthly payments on the SUBJECT LOAN claiming a beneficial interest in the SUBJECT PROPERTY and pursuant to which Defendants foreclosed upon the SUBJECT PROPERTY.

54. Defendants Materially Breached the DOT:

    a. Failure to Apply Payments: Defendants materially breached the DOT by rejecting partial payments and failed to apply trial payments paid by the Plaintiff. Specifically, Section 2(a) of the DOT states the following in part: "Application of Payments or Proceeds: Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts under Section 3. Such

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

payments shall be applied first to each Periodic Payment in the order in which it became due. ... If Lender receives a payment from Borrower for a delinquent Periodic Payment ... the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. ... Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note." Please see Section 2(a) of *Exhibit A* attached hereto and incorporated herein by this reference.

    i.  Defendants refused to accept partial payments from Plaintiff from June through August 2023 and did not properly credit payments made toward his trial modification plan. The DOT clearly provides that any payment received should be applied to outstanding periodic payments and related charges, yet Defendants' actions prevented Plaintiff from reducing his principal or arrears, in direct breach of the payment application provisions.

b.  <u>Failure to Honor Loan Modification Process</u>: Defendants materially breached the Deed of Trust by failing to act in good faith with respect to their contractual duties concerning loss mitigation and loan modification review. Specifically, Plaintiff began submitting documents for his loan modification application as early as August 2022, with the assistance of his daughter. Despite these early submissions, Defendant PHH in 2023 repeatedly claimed that Plaintiff's loan modification application was "incomplete," even though Plaintiff had already submitted the requested documents. Plaintiff was forced to resubmit the same documents multiple times due to Defendants' inconsistent statements that documents were either not received or were insufficient.

EXHIBIT "1"
34 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

In August 2024, Defendants denied another modification request based on alleged "insufficient income," and demanded household income documentation, which Plaintiff attempted to provide. In early 2025, Defendants required yet another modification application. Plaintiff complied and then made all four trial payments from May through August 2025 as instructed. Defendants then issued final modification documents but rejected them due to a minor handwritten notation, and when replacement documents were supposedly mailed, they failed to deliver them to Plaintiff, causing the returned documents to be late. Despite Plaintiff's timely appeal, Defendants continued with foreclosure activity. These actions deprived Plaintiff of the benefit of his bargain, caused confusion, and ultimately resulted in Plaintiff losing his home despite his repeated attempts to comply with the loan modification process.

c. Failure to Provide Notice of Default: Defendants materially breached the DOT by failing to provide Plaintiff with the required NOD prior to accelerating the SUBJECT LOAN and initiating foreclosure proceedings. Section 22 of the DOT states the following in part: "Acceleration; Remedies. **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument** (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

**right to bring a court action to assert the non-existence of a default or any other**

**defense to acceleration and sale."** (Emphasis added). Please see Section 22 of *Exhibit*

*A* attached here and incorporated herein by this reference.

     i.  Acceleration Before Foreclosure: Despite this contractual requirement, Plaintiff

        never received any Notice of Default at any time. Defendants recorded a Notice

        of Default on September 24, 2024, yet no such notice was ever served or

        delivered to Plaintiff as required by the DOT. Defendants then recorded a Notice

        of Trustee's Sale on February 27, 2025, and scheduled an initial foreclosure sale

        for April 10, 2025, again without providing Plaintiff with the DOT-mandated

        notice advising him of the alleged default, his right to reinstate, or his right to

        challenge the acceleration and sale. Defendants' actions constitute a direct

        breach of the DOT because the contractual notice was required before any

        acceleration or foreclosure activity.

     ii.  Defendants' Obligation Only Arose Upon Plaintiffs' Default: Defendants' duty

        to provide the requisite above-referenced notice only arose upon Plaintiffs'

        default. Accordingly, Defendants are estopped from arguing that Plaintiffs were

        in breach of the DOT and that, as such, Defendants were without obligation to

        provide the requisite notice. In fact, Defendants' obligation only arose in the face

        of such alleged default.

   d.  Failure to Afford Plaintiffs of Right to Reinstate: Defendants materially breached

     Section 22 of the DOT by failing to afford Plaintiffs notice of their right to reinstate

     the SUBJECT LOAN. Please see Section 22 of *Exhibit A* attached hereto and

     incorporated herein by this reference. In this case, Defendants never served Plaintiff

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

with the required Notice of Default, and therefore never provided the mandated reinstatement advisement. Defendants also prevented reinstatement by mishandling Plaintiff's loan modification applications, rejecting payments, and failing to communicate accurate loan status information. As a result, Plaintiff was denied any opportunity to reinstate the loan before Defendants proceeded with foreclosure and ultimately sold the SUBJECT PROPERTY.

e. <u>Failure to Provide Notice of Right to Dispute Acceleration and Sale:</u> Failure to Provide Notice of Right to Dispute Acceleration and Sale: Defendants materially breached Section 22 of the DOT by failing to provide Plaintiffs with notice of their right to bring a lawsuit to dispute the acceleration and sale. Please see Section 22 of *Exhibit A* attached hereto and incorporated herein by this reference. The Notice of Default was required to include language advising Plaintiffs that they were entitled to bring a court action asserting defenses to the acceleration and sale of the SUBJECT PROPERTY. However, at no time did Defendants issue or serve Plaintiffs with such notice, thereby depriving Plaintiff of their rights under the DOT and California foreclosure laws.

55. <u>NOD is Fraudulent:</u> Rather, the NOD recorded on September 24, 2024, falsely states: **"<u>Following the expiration of the time period referred to in the first paragraph of this notice... you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.</u>"** (Emphasis added.) Please see *Exhibit C* attached hereto and incorporated herein by this reference. This representation is facially fraudulent because Section 22 of the DOT affords Plaintiff additional rights—not only the right to reinstate, but also the contractual right to bring a court action to contest the alleged default, acceleration, or sale. Defendants never served the DOT-mandated Notice of Default

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

containing these advisements and never made the required contact under the law, yet falsely recorded a declaration claiming compliance. By omitting Plaintiff's contractual and statutory rights and misrepresenting that payment in full was his only legal option, the NOD is fraudulent on its face.

56. <u>Acceleration Before Foreclosure</u>: Just to clarify, the Deed of Trust contains a clause that required the lender to send a notification to Plaintiff informing them that the SUBJECT LOAN is in default before it was allowed to accelerate the SUBJECT LOAN and proceed with foreclosure. More importantly, this notice was required to include language advising Plaintiff that she was entitled to bring a court action asserting defenses to the acceleration and sale. At no point in time did Plaintiff receive ANY notice that complied with the requirements of Paragraph 22 of the Deed of Trust.

57. <u>Defendants' Obligation Only Arose Upon Plaintiff's Default</u>: Defendants' duty to provide the requisite above-referenced notice only arose upon Plaintiff's default. Accordingly, Defendants is estopped from arguing that Plaintiff was in breach of the Deed of Trust and that as such Defendants were without obligation to provide the requisite notice. In fact, Defendants obligation only arose in the face of such alleges default.

58. <u>Plaintiff Performed His Obligations and/or Was Excused from Such Performance</u>:

    a. With regard to the material breach of the DOT discussed in Paragraph 54(a) hereinabove, Plaintiff performed his obligations in good faith by attempting to tender payments toward the SUBJECT LOAN. Plaintiff made repeated attempts to submit partial payments between June and August 2023, and later made all required trial modification payments from May through August 2025. Plaintiff acted diligently and in full compliance with his contractual obligations to mitigate arrears

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

and prevent default. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference.

b. With regard to the material breach of the DOT discussed in Paragraph 54(b), Plaintiff performed all obligations required of him in connection with the loan modification process. Plaintiff began submitting modification documents as early as August 2022, repeatedly resubmitted documents throughout 2023, provided additional income documentation in 2024, completed a full trial payment plan in 2025, and timely executed and returned final modification documents. Plaintiff's performance under the DOT and loss mitigation process was diligent, proactive, and continuous. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference.

c. With regard to the material breach of the DOT discussed in Paragraph 54(c), Plaintiff's performance was excused. Under Section 22 of the DOT, Defendants were required to provide Plaintiff with a Notice of Default advising him of the alleged default, his right to reinstate, and his right to dispute acceleration and sale before accelerating the loan or pursuing foreclosure. Defendants never served Plaintiff with any such notice at any time. Without the required NOD, Plaintiff could not know the alleged amount of default, the steps to cure, or the deadline to prevent acceleration. Because Defendants failed to comply with the DOT's mandatory notice provisions, Plaintiff's ability to perform was rendered impossible, and his obligations were suspended.

d. With regard to the material breach of the DOT discussed in Paragraph 54(d), Plaintiff's performance was similarly excused. Section 22 of the DOT required

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Defendants to notify Plaintiff of his right to reinstate the loan after acceleration. Because Defendants never issued or served the Notice of Default, Plaintiff was never informed of the amount needed to reinstate, the reinstatement deadline, or how to cure the alleged default. Defendants also interfered with reinstatement by rejecting payments, mishandling loan modification applications, and providing inaccurate and conflicting loan status information. Plaintiff could not perform reinstatement obligations that were never communicated to him, and any further performance was excused.

e.  With regard to the material breach of the DOT discussed in Paragraph 54(e), Plaintiff's performance was excused because Defendants failed to provide the required notice of his right to bring an action challenging the alleged default, acceleration, or foreclosure. Section 22 of the DOT required Defendants to notify Plaintiff of his right to pursue judicial remedies prior to the foreclosure sale. Defendants never issued or served any such notice, depriving Plaintiff of the opportunity to protect his interests or challenge the foreclosure before his home was sold on October 15, 2025. Because Defendants did not comply with the contractual notice requirements, Plaintiff's performance under the DOT was rendered impossible or excused as a matter of law.

59. Plaintiff Alleges a Valid Oral Agreement with Defendants Outside the Statute of Frauds: Plaintiff further alleges that, in addition to the DOT, Defendants, through their agents, representatives, and employees, made specific oral agreements and representations regarding the status of the foreclosure proceedings and the handling of Plaintiff's loss mitigation appeal. Specifically, on or about October 9, 2025, Defendants expressly advised

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

Plaintiff that the scheduled foreclosure sale would be placed on hold pending review of his appeal of the loan modification denial. Plaintiff reasonably relied on this oral assurance that no foreclosure activity would occur while the appeal remained under review. However, despite this representation, Defendants breached the oral agreement by proceeding with the foreclosure sale on October 15, 2025, only six days after informing Plaintiff that the sale was on hold. This conduct constitutes a clear violation of the oral agreement and directly resulted in Plaintiff losing the SUBJECT PROPERTY.

60. <u>Statute of Frauds Inapplicable:</u> These oral agreements are valid and outside the Statute of Frauds due to the fact that Plaintiff relied on Defendants' promises and performed all of Plaintiff's obligations pursuant to these promises. Accordingly, Defendants' unperformed promises are outside the realm of the Statute of Frauds. Further, given Plaintiff's reliance and performance, the performance in which Defendants directly participated, Defendants are equitably estopped from claiming the Statute of Frauds as a defense, as the oral promises are binding. Equitable estoppel constitutes an exception to the Statute of Frauds, and applies where a party would suffer an unconscionable injury absent enforcement of the oral agreement, including where a party has been induced by another to seriously change its position in reliance upon the agreement, as is the case here.

61. <u>Defendant's Materially Breached the Valid Oral Agreement:</u> Defendants, through their agents and representatives, materially breached the above-referenced valid oral agreements made with Plaintiff. Specifically:

    a.   Defendants materially breached their oral assurances made in 2022 and 2023 that Plaintiff's loan modification application was under active review and that the review process would take 30 to 60 days. Despite these assurances, Defendants repeatedly

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

claimed documents were missing, asserted that applications had not been received, and failed to conduct any meaningful or timely review. Defendants continued to request duplicative submissions, rejected partial payments, and allowed arrears to accumulate, all contrary to their assurances that the application was being reviewed.

    b.   Defendants materially breached their additional representations throughout 2023 and 2024 that Plaintiff's modification application and later appeal were still under review, and that foreclosure activity would not proceed during such review. Despite these repeated assurances, Defendants recorded a Notice of Default on September 24, 2024, and later recorded and mailed a Notice of Trustee's Sale on February 27, 2025, all while informing Plaintiff that his applications and appeal were actively being processed.

    c.   Defendants materially breached the most critical oral agreement made on or about October 9, 2025, when they expressly advised Plaintiff that the scheduled foreclosure sale would be placed on hold pending appeal review. In direct contradiction of this representation, Defendants proceeded with the foreclosure sale on October 15, 2025, only six days later, resulting in Plaintiff's loss of the SUBJECT PROPERTY. This conduct constitutes a clear and material breach of Defendants' oral agreement to suspend foreclosure activity during the appeal period.

62. <u>Damages</u>: As a direct and proximate result of Defendants' breach of contract, Plaintiff have been prejudiced, have suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at trial.

///

EXHIBIT "1"
42 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

**EIGHTH CAUSE OF ACTION**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against ALL Defendants)**

63. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

64. Covenant of Good Faith: Plaintiff alleges that at all times there existed an implied covenant of good faith and fair dealing requiring Defendants, and each of them, to safeguard, protect, or otherwise care for the assets and rights of Plaintiffs. Said covenant prohibited Defendants from activities interfering with or contrary to the rights of Plaintiffs. In addition to being implied in the above-referenced DOT, under the statutory scheme for loss mitigation alternative review and non-judicial foreclosure, the covenant of good faith is coextensive with Defendants' duty to properly review Plaintiff for loss mitigation alternatives and conduct the foreclosure proceedings fairly, openly and in good faith.

65. Written Agreement – Deed of Trust: Please see Paragraph 10 and *Exhibit A*, incorporated herein by this reference.

66. Plaintiff alleges a Written Agreement with Defendants: Subsequent to entering into the DOT, Plaintiff alleges that Defendants were assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiff has an agreement with at least one of the above-referenced Defendants, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other. It is pursuant to this agreement that Defendants have collected monthly payments on the SUBJECT LOAN claiming a

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

beneficial interest in the SUBJECT PROPERTY and pursuant to which Defendants is foreclosing upon the SUBJECT PROPERTY.

67. <u>Breach of Good Faith and Fair Dealing</u>: Defendants interfered with Plaintiff's right to receive the benefits of the above-referenced agreement and breached the covenant of good faith and fair dealing implied in the Deed of Trust. Specifically:

a. Defendants made no effort to communicate with Plaintiff prior to initiating foreclosure activity and never advised him of his right to request an in-person or telephonic meeting within 14 days to address foreclosure-prevention alternatives. Had Plaintiff been informed of this right, he would have requested such a meeting to pursue available options. Defendants' failure to provide the required advisement and opportunity for meaningful discussion constitutes a direct violation of Cal. Civ. Code § 2923.5.

b. Defendants recorded a Notice of Default on September 24, 2024, and later recorded and mailed a Notice of Trustee's Sale on February 27, 2025, while Plaintiff had active, complete loan modification applications and an unresolved appeal, in violation of Cal. Civ. Code § 2923.6.

c. Defendants violated Cal. Civ. Code § 2923.7 by failing to provide Plaintiff with a meaningful, knowledgeable, or consistent Single Point of Contact. Instead, Defendants routed Plaintiff through automated systems, provided contradictory information, lost documents, and forced repeated resubmissions from 2022 through 2025.

d. Defendants violated Cal. Civ. Code § 2924.10 by failing to issue any written acknowledgment of Plaintiff's loan modification submissions within five business days of receipt, despite Plaintiff submitting documents repeatedly beginning in August 2022 and throughout 2023–2025.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

e.  Defendants violated Cal. Civ. Code § 2924.11 by continuing to impose fees, charges, and interest while Plaintiff's complete applications, trial plan payments, and appeal were pending—despite Plaintiff making all four trial payments from May through August 2025 exactly as instructed.

f.  Defendants violated Cal. Civ. Code § 2924.17 by recording foreclosure documents without reviewing competent and reliable evidence about Plaintiff's loan status, modification submissions, or eligibility for foreclosure alternatives, and ultimately conducting a foreclosure sale without proper review, even though Plaintiff had active loss-mitigation efforts and a pending appeal.

g.  Defendants repeatedly represented to Plaintiff that her application was incomplete or missing documentation that Plaintiff had already submitted multiple times, thereby delaying review and undermining her eligibility for foreclosure prevention.

h.  Defendants proceeded with foreclosure, recording and executing documents that resulted in the wrongful trustee sale of the SUBJECT PROPERTY on October 15, 2025, without exercising reasonable diligence to ensure Plaintiff's eligibility for loan modification or accurately reviewing his loan status.

i.  Defendants failed to exercise reasonable diligence in managing the SUBJECT LOAN and recorded foreclosure documents without ensuring that Plaintiff's information, account status, and application history were accurately reviewed, in violation of both the DOT and the statutory duty to act fairly in servicing and foreclosure proceedings.

68. <u>Damages</u>: As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum determined according to proof at trial.

EXHIBIT "1"
45 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

# NINTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (Against ALL Defendants)

69. Plaintiff pleads the Ninth Cause of Action (Promissory Estoppel) and the Tenth Cause of Action (Equitable Estoppel) in the alternative.

70. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

71. Clear and Unambiguous Promise(s): Defendants, and each of them, made various clear and unambiguous promises as discussed in Paragraph 56 hereinabove, the allegations of which are incorporated herein. Specifically, Defendants expressly represented to Plaintiff on or about October 9, 2025, that the scheduled foreclosure sale would be placed on hold pending review of his appeal of the loan modification denial. Plaintiff reasonably relied on this representation by continuing to cooperate in the appeal process, refraining from seeking emergency legal remedies, and trusting that Defendants would honor their promise.

72. Failure to Perform Promises: Despite these clear and unambiguous promises, Defendants failed to perform as required. In reality, Defendants misled Plaintiff so that Defendants could proceed with the foreclosure process, thereby forcing the SUBJECT PROPERTY into wrongful foreclosure. Specifically:

    a. Defendants breached their oral agreement by assuring Plaintiff on or about October 9, 2025, that the scheduled foreclosure sale would be placed on hold pending review of his appeal, while simultaneously failing to honor that commitment and failing to provide any meaningful protection of Plaintiff's rights during the appeal process.

    b. Defendants further breached their promise by proceeding with the foreclosure sale on October 15, 2025, after advising Plaintiff that the sale was on hold. This conduct

EXHIBIT "1"
46 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

directly contradicted their prior assurances, deprived Plaintiff of any opportunity to protect his interest in the SUBJECT PROPERTY, and resulted in the wrongful foreclosure of his home.

73. <u>Reliance</u>: Plaintiff, believing that Defendants would honor their promises, given the confirmation of receipt of the mortgage assistance application, refrained from pursuing other foreclosure prevention options, such as seeking immediate legal intervention or immediately filing a lawsuit to stop the foreclosure. Plaintiff's reliance on Defendants' promises resulted in his being at imminent risk of losing title to the SUBJECT PROPERTY.

74. <u>Foreseeable and Reasonable Reliance</u>: Plaintiffs' reliance was reasonable and foreseeable since Defendants own and service Plaintiff loan have the right to modify the loan and have the power to refrain from proceeding with foreclosure, and as such Plaintiff have a right to reasonably and foreseeably believe Defendants' assertions and promises. Specifically:

a. Plaintiff reasonably relied on Defendants' express assurance that the scheduled foreclosure sale would be placed on hold pending review of his appeal. In reliance on this representation, Plaintiff continued to cooperate with Defendants, provided requested information, and refrained from seeking emergency legal intervention that could have prevented the loss of his home.

b. Plaintiff's reliance was further reasonable because Defendants were the parties with exclusive control over the foreclosure timeline and the authority to halt or postpone the sale. Defendants' statements were made in the context of an active loan modification appeal, reinforcing Plaintiff's belief that foreclosure activity would not proceed while the appeal remained pending.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

75. <u>Detriment</u>: Plaintiff clearly relied on Defendants' promises to Plaintiffs' detriment as Plaintiff was forced into the foreclosure process and have been forced to incur substantial interest, fees and costs all to the benefit of Defendants. Additionally, Plaintiff has lost title of the SUBJECT PROPERTY to his absolute detriment.

76. <u>Statute of Frauds Inapplicable</u>: These oral promises are valid and outside the Statute of Frauds due to the fact that Plaintiff relied on Defendants' promises and performed all of Plaintiffs' obligations pursuant to these promises. Accordingly, Defendants' unperformed promises are outside the realm of the Statute of Frauds. Further, given Plaintiffs' reliance and performance, the performance in which Defendants directly participated, Defendants is equitably estopped from claiming the Statute of Frauds as a defense, as the oral promises are binding. Equitable estoppel constitutes an exception to the statute of frauds, and applies where a party would suffer an unconscionable injury absent enforcement of the oral agreement, including where a party has been induced by another to seriously change its position in reliance upon the agreement, as is the case here.

77. <u>Damages</u>: As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum determined according to proof at trial.

### TENTH CAUSE OF ACTION
### EQUITABLE ESTOPPEL
#### (Against All Defendants)

78. Plaintiff pleads the Ninth Cause of Action (Promissory Estoppel) and the Tenth Cause of Action (Equitable Estoppel) in the alternative.

79. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

80. <u>Knowledge of the True Facts:</u> Defendants at all relevant times knew the true facts as discussed in Paragraph 11 hereinabove, the allegations of which are incorporated herein. Specifically, Defendants knew that Plaintiff had repeatedly submitted complete loan modification applications beginning in August 2022; that Plaintiff had provided all requested documentation; that Plaintiff made all required trial payments from May through August 2025; and that Plaintiff never received the "final modification documents" which Defendants claimed to have mailed. Defendants further knew that Plaintiff remained under the belief that his applications were under review, that his appeal was pending, and that foreclosure would not proceed while his loss mitigation review remained active.

81. <u>Conduct Intended to Be Relied Upon Such That Reliance Was Reasonably Expected:</u> Defendants affirmatively represented to Plaintiff that his loan modification applications were being reviewed, that additional documents were needed before any foreclosure activity would proceed, that final modification documents had been mailed to him, and that the foreclosure sale would not move forward while his appeal remained pending. Defendants made these representations with the intent that Plaintiff would rely upon them by continuing to submit documents, refraining from seeking independent legal intervention, and believing that foreclosure activity was suspended. Defendants' conduct was such that Plaintiff had a right to believe Defendants intended him to act upon such representations.

82. <u>Plaintiff's Ignorance of the True Facts:</u> At the time the above representations were made, Plaintiff was ignorant of the true facts, specifically, that Defendants had already continued foreclosure activity in the background; that the "final modification documents" had not been mailed as represented; that Defendants internally treated his application as incomplete

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

despite receiving his documents; and that Defendants intended to proceed with foreclosure despite the pending appeal.

83. <u>Reliance Causing Injury</u>: Plaintiff, relying on Defendants' conduct and representations were true and refrained from pursuing other foreclosure-prevention options, including seeking emergency legal intervention or filing suit to stop the sale. Plaintiff relied on Defendants' statements and conduct and was thereby placed at imminent risk of losing title to the SUBJECT PROPERTY.

84. <u>Detriment</u>: Plaintiff clearly relied on Defendants' representations to Plaintiffs' detriment as Plaintiff was forced into the foreclosure process and have been forced to incur substantial interest, fees and costs all to the benefit of Defendants. Additionally, Plaintiff has lost title of the SUBJECT PROPERTY to his absolute detriment.

85. <u>Application of Equitable Estoppel:</u> Defendants, having knowingly created the circumstances leading to Plaintiff's detrimental reliance, are equitably estopped from asserting any defense inconsistent with their prior representations and conduct, including but not limited to the validity of the foreclosure, the sufficiency of Plaintiff's loan modification submissions, or Plaintiff's purported failure to return documents or cure alleged delinquencies. Defendants repeatedly represented that Plaintiff's loan modification applications and appeal were under review, that required documents had been mailed, and that foreclosure activity would not proceed while the appeal remained pending. Equity prohibits Defendants from benefiting from their own misleading conduct—particularly where Defendants proceeded with foreclosure despite Plaintiff's full cooperation—and prevents Defendants from enforcing rights they induced Plaintiff to forbear or believe were temporarily suspended.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

86. Damages: As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum determined according to proof at trial.

**ELEVENTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

87. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

88. Misrepresentations of Fact: Defendants, and each of them, made various fraudulent and intentional misrepresentations of fact as discussed. Specifically:

   a. Defendants misrepresented to Plaintiff in August and September 2025 that the final loan modification documents had been mailed and that Plaintiff only needed to sign, notarize, and return them to complete the modification process. However, Plaintiff never received the documents, and Defendants later relied on Plaintiff's alleged failure to return them as a basis to deny the modification. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference

   b. Defendants executed and recorded a fraudulent NOD on September 24, 2024, supported by a false declaration of compliance that misrepresented that outreach had been made to Plaintiff and that Plaintiff had been advised of his rights under Civil Code § 2923.5, including the right to an in-person meeting within 14 days. In reality, no such contact ever occurred, and Plaintiff was never given any of the advisements required by law. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

c. Defendants issued a delinquency notice on October 17, 2025, falsely asserting that Plaintiff was past due on payments from May through August 2025, despite the fact that Plaintiff had made all required trial payments during that period, on time and in full. Defendants knowingly misrepresented Plaintiff's payment status to create the false appearance of default. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference.

d. On or about October 9, 2025, Defendants misrepresented to Plaintiff that the foreclosure sale would be placed on hold while Plaintiff's appeal of the loan modification denial was under review. In reality, Defendants proceeded with the foreclosure sale on October 15, 2025, directly contradicting their prior assurance and intentionally misleading Plaintiff into believing his home was not at imminent risk of sale. Please see Paragraph 11 hereinabove, the allegations of which are incorporated herein by this reference.

89. <u>Knowledge of Falsity</u>: At the time Defendants made the aforementioned misrepresentations, they knew that they were false and were made solely to induce reliance upon them by Plaintiffs. Namely Defendants wanted Plaintiff to believe that Defendants was proceeding with a valid foreclosure of the SUBJECT PROPERTY and complying with all terms of the Deed of Trust and stringent requirements of the Civil Code.

90. <u>Intent to Deceive</u>: The fraudulent misrepresentations discussed in Paragraph 85 (as well as any reference to any fraudulent documents) were made with the intent to deceive Plaintiff and prevent them from taking precautionary measures to protect themselves from the foreclosure process, from incurring excessive fees associated with foreclosure, and from saving their interest in the SUBJECT PROPERTY.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

91. <u>Reliance</u>: Plaintiff reasonably relied on the above-referenced fraudulent misrepresentations by Defendants as Defendants was/are respectable financial institutions, alleged beneficiary of the Promissory Note, the lender, trustee and/or servicer with which Plaintiff believed they were contractually bound. Moreover, Plaintiff did everything that was respectively asked of them by Defendants. Plaintiff could not have discovered the true nature of the material facts on their own.

92. <u>Reasonable and Detrimental Reliance</u>: Plaintiff clearly relied on Defendants misrepresentations to Plaintiffs' detriment as they failed to retain legal counsel in a timely manner, which would have resolved the matter earlier and resulted in saving thousands of dollars of excessive fees, costs and interest, from losing the SUBJECT PROPERTY at a trustee's sale or from potentially losing the SUBJECT PROPERTY at a trustee sale or subsequent transfer. Defendants misrepresented the above information and/or documents all in an effort to foreclose upon the SUBJECT PROPERTY pursuant to facially invalid and fraudulent documents and information.

93. <u>Damages</u>: As a direct and proximate result of Defendants' fraudulent misrepresentation(s), Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at trial.

94. <u>Punitive Damages</u>: Defendants are guilty of oppression, fraud and malice. "Malice" is defined in the statute as conduct "intended by the Defendants to cause injury to plaintiff, or despicable conduct that is carried on by the Defendants with a willful and conscious disregard for the rights or safety of others." In this case, it is clear that Defendants engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff as alleged in detail throughout this Verified Complaint and in this cause of action.

EXHIBIT "1"
53 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

1    "Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship

2    in conscious disregard of that person's rights." In this case Defendants subjected Plaintiff

3    to cruel and unjust hardship by engaging in the above-referenced fraudulent conduct and

4    thereby actually depriving Plaintiff of the SUBJECT PROPERTY. Such egregious conduct

5    was to the benefit of Defendants and resulted in cruel and unjust hardship to Plaintiffs.

6    "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact

7    known to the Defendants with the intention on the part of the Defendants of thereby

8    depriving a person of property or legal rights or otherwise causing injury." It is clear by this

9    thoroughly pleaded cause of action that Defendants engaged in fraud and thereby

10    unnecessarily forced Plaintiff into the foreclosure process to the benefit of Defendants. The

11    aforementioned behavior exhibited by the Defendants as discussed in detail throughout this

12    cause of action was despicable, vile, outrageous, and outside the bounds of human decency,

13    sufficient to justify an award of exemplary and punitive damages.

14    

15    <center>**TWELFTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**</center>

16    95. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the

17    aforementioned Paragraphs as if fully set forth herein.

18    96. <u>Misrepresentations of Fact</u>: Defendants, and each of them, made various fraudulent and

19    negligent misrepresentations of fact. Please see Paragraph 85 hereinabove incorporated

20    herein by this reference. Most importantly, Defendants repeatedly provided Plaintiff with

21    inaccurate information throughout the loan modification and foreclosure process.

22    Defendants represented in August and September 2025 that final loan modification

23    documents had been mailed to Plaintiff, even though Plaintiff never received them.

24    Defendants recorded a Notice of Default on September 24, 2024, supported by a declaration

25    

<center>VERIFIED COMPLAINT
**51** OF **71**</center>

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

1    falsely stating that required outreach and statutory advisements had been provided.

2    Defendants later issued a delinquency notice on October 17, 2025, reporting that Plaintiff

3    was past due on payments from May through August 2025 despite Plaintiff having made all

4    required trial payments during that period. Finally, on October 9, 2025, Defendants

5    informed Plaintiff that the foreclosure sale would be placed on hold pending appeal review,

6    yet the foreclosure sale proceeded on October 15, 2025. These misrepresentations misled

7    Plaintiff about the status of his loan, his rights, and the foreclosure timeline, and directly

8    contributed to the wrongful loss of the SUBJECT PROPERTY.

9

10   97. No Reasonable Ground for Believing the Misrepresentations to Be True: At the time

11   Defendants made the aforementioned misrepresentations, Defendants knew or should have

12   known they were false. Defendants knew or should have known whether a sale was

13   scheduled to proceed, whether a loan modification application was complete, whether the

14   documents required to proceed with foreclosure were validly executed and recorded,

15   whether Defendants even had the right to proceed with foreclosure, etc. Moreover,

16   Defendants knew or should have known of the fact that nobody contacted Plaintiff to asses

17   Plaintiff's financial situation or to discuss non-foreclosure alternatives, or provide Plaintiff

18   with a copy of the NOD and NOTS.

19

20   98. Reliance: Please see Paragraph 88 hereinabove, the allegations of which are incorporated

21   herein by this reference.

22   99. Reasonable and Detrimental Reliance: Please see Paragraph 89 hereinabove, the allegations

23   of which are incorporated herein by this reference.

24

25

---

**VERIFIED COMPLAINT**
**52 OF 71**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

100. <u>Damages</u>: As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at trial.

<div align="center">

**THIRTEENTH CAUSE OF ACTION**
**FRAUDULENT PROMISE WITHOUT INTENTION TO PERFORM**
**(Against All Defendants)**

</div>

101. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

102. <u>Fraudulent Promises</u>: Please see Paragraph 56 and 68 referenced herein above and incorporated herein by this reference. These paragraphs describe Defendants' express oral promise made on or about October 9, 2025, wherein Defendants advised Plaintiff that the scheduled foreclosure sale would be placed on hold pending review of his loan modification appeal, and further represented that no foreclosure activity would proceed during the appeal process. Plaintiff reasonably relied on these clear and unambiguous assurances. However, Defendants had no intention of honoring these promises and proceeded with the foreclosure sale on October 15, 2025.

103. <u>Failure to Perform Promises</u>: Please see Paragraph 69 referenced herein above and incorporated herein by this reference. Specifically, that the foreclosure went forward, and Plaintiff ultimately lost the SUBJECT PROPERTY.

104. <u>Promises Important to the Transaction</u>: Clearly these promises were important to the transaction between Plaintiff and Defendants, as performance of the promise would have prevented the SUBJECT PROPERTY from being forced into the unlawful foreclosure proceeding, and from Plaintiff having to incur substantial fees, interest, and costs, all to the

<div align="center">

VERIFIED COMPLAINT
**53** OF **71**

</div>

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

benefit of Defendants. As a result of these false promises, Plaintiff has suffered financial harm and is at imminent risk of losing the SUBJECT PROPERTY.

105. <u>Defendants Did Not Intend to Perform Promise When Made:</u> At the time Defendants made the aforementioned promises, they knew they were false, that they had no intention of performing the promises, and that they were making the promises solely to induce reliance upon them by Plaintiff.

106. <u>Intent for Plaintiff to Rely on Promise:</u> The aforementioned promises were made with the intent that Plaintiff rely on the promises and to deceive and imbue Plaintiff with a false sense of security, such that Plaintiff would not challenge Defendants' actions earlier thereby allowing interest, fees and costs to continue to accrue to Defendants' benefit.

107. <u>Reliance:</u> Plaintiff reasonably relied on the above-referenced fraudulent promises made by Defendants as Defendants was/is a respectable financial institution, beneficiary of the Promissory Note, the lender with which Plaintiff was contractually bound, the alleges authorized trustee, and/or servicer, and/or the investor who purchased the SUBJECT PROPERTY. Accordingly, Defendants could legally contract with Plaintiff, could promise to take certain actions pertaining to the SUBJECT LOAN and foreclosure and Plaintiff is entitled to rely on such promises, as they did.

108. <u>Reasonable and Detrimental Reliance:</u> Plaintiff reasonably and detrimentally relied on the aforementioned promises by believing that Defendants was acting within their authority, validly and pursuant to the stringent requirements of the California Civil Code. As a result Plaintiff delayed in filing this lawsuit thereby allowing fees, costs and interest to accrue to Defendants' benefit.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

109. Statute of Frauds Inapplicable: These oral promises are valid and outside the Statute of Frauds due to the fact that Plaintiff relied on Defendants' promises and performed all of Plaintiffs' obligations pursuant to these promises. Accordingly, Defendants' unperformed promises are outside the realm of the Statute of Frauds. Further, given Plaintiffs' reliance and performance, the performance in which Defendants directly participated, Defendants is equitably estopped from claiming the Statute of Frauds as a defense, as the oral promises are binding. Equitable estoppel constitutes an exception to the statute of frauds, and applies where a party would suffer an unconscionable injury absent enforcement of the oral agreement, including where a party has been induced by another to seriously change its position in reliance upon the agreement, as is the case here.

110. Damages: As a direct and proximate result of Defendants' fraudulent promises, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages including damage to his credit, interest, fees and costs including, without limitation, attorney's fees and costs, all in an amount according to proof at the time of trial.

111. Punitive Damages: Defendants are guilty of oppression, fraud and malice. "Malice" is defined in the statute as conduct "intended by the Defendants to cause injury to Plaintiff, or despicable conduct that is carried on by the Defendants with a willful and conscious disregard for the rights or safety of others." In this case, it is clear that Defendants engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff as alleged in detail throughout this Verified Complaint and in this cause of action. "Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." In this case Defendants subjected Plaintiff to cruel and unjust hardship by engaging in the above-referenced fraudulent conduct and

EXHIBIT "1"
58 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

thereby actually depriving Plaintiff of the SUBJECT PROPERTY. Such egregious conduct was to the benefit of Defendants and resulted in cruel and unjust hardship to Plaintiffs. "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury." It is clear by this thoroughly pleaded cause of action that Defendants engaged in fraud and thereby unnecessarily forced Plaintiff into the foreclosure process to the benefit of Defendants. The aforementioned behavior exhibited by the Defendants as discussed in detail throughout this cause of action was despicable, vile, outrageous, and outside the bounds of human decency, sufficient to justify an award of exemplary and punitive damages.

## FOURTEENTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
#### (Against All Defendants)

112. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

113. <u>Fraudulent Concealment of Material Fact:</u> Plaintiff alleges that Defendants concealed material facts from Plaintiff as detailed in Paragraph 75 hereinabove, the allegations of which are incorporated herein by this reference. At all times relevant herein, Defendants have concealed the aforementioned fraudulent conduct from Plaintiff despite the fact that Plaintiff has brought this fraudulent conduct to their attention.

114. <u>Knowledge of Concealment by Defendants</u>: At the time Defendants concealed the aforementioned facts, knew they were material, and knew that if Defendants acknowledged the truth to Plaintiff Defendants would be prevented from proceeding with the wrongful foreclosure of the SUBJECT PROPERTY.

---

VERIFIED COMPLAINT
**56** OF **71**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

115. <u>Intent to Deceive</u>: The above-referenced material facts in Paragraphs 75 and 83 were concealed by Defendants with the intent to deceive Plaintiff and the world that, Defendants were authorized to proceed with the trustee sale.

116. <u>Defendants' Knowledge</u>: At all times relevant herein, Defendants knew the above-referenced material fact(s) in Paragraphs 75 and 83 were fraudulent and intentionally concealed such facts from Plaintiff to Plaintiff's detriment and Defendants' benefit.

117. <u>Damages</u>: As a direct and proximate result of Defendants' misrepresentation(s) and concealment, Plaintiff have been prejudiced, have suffered, and will continue to suffer, general and special damages in a sum determined according to proof at trial.

118. <u>Punitive Damages</u>: Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that Defendants fraudulently concealed the material facts in a calculated effort to injure Plaintiffs. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

### FIFTEENTH CAUSE OF ACTION
### ELDER ABUSE
### (Against All Defendants)

119. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

120. <u>Senior Plaintiff</u>: Plaintiff was at all times herein mentioned relating to the wrongful acts as alleged by Plaintiff against Defendants and each of them, were over the age of 65 years, and an elder within the meaning of Welfare and institutions Code Section 15610.27.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

121. <u>Code Section</u>: As a result of the actions committed by the Defendants, and each of them, the Defendants have committed acts that constitute elder abuse against Plaintiff, and each of them. By virtue of the foregoing, Defendants, and each of them, have committed elder abuse as defined at Welfare and Institutions Code Section 15610.30.

122. <u>Knew Plaintiff Owned the SUBJECT PROPERTY</u>: Defendants knew or should have known that the Plaintiff owned and had the right to the SUBJECT PROPERTY.

123. <u>Acts of Abuse</u>: Defendants took, appropriated and retained the SUBJECT PROPERTY that belongs to Plaintiff by recording a false NOD, NOTS and TDUS, by wrongfully foreclosing upon the SUBJECT PROPERTY for Defendants' wrongful use and/or with intent to defraud Plaintiff, the courts and law enforcement, to gain monetarily. Defendants assisted in the taking, appropriating and retaining of the SUBJECT PROPERTY, which was owned by Plaintiff, for Defendants' wrongful use and/or with intent to defraud and to gain monetarily, which secured a fictitious debt against the SUBJECT PROPERTY. Specifically, Defendants, inclusive and each of them, engaged in egregious conduct by recording a facially fraudulent and invalid NOD and NOTS without having complied with the requirements of the Civil Code, pursuant to which they appropriated the SUBJECT PROPERTY from Plaintiffs. Please see Paragraph 11 hereinabove incorporated herein by this reference.

124. <u>Substantial Factor</u>: Defendants' aforementioned actions were a substantial factor in harming Plaintiffs.

125. <u>Defendants Knew or Should Have Known</u>: At the time Defendants engaged in the above referenced actions described herein above in Paragraph 11, they knew or should have known that such actions would cause Plaintiff substantial harm.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

126. <u>Damages</u>: As a direct and proximate result of Defendants' unlawful conduct, Plaintiff have been harmed as described herein. Specifically, Plaintiff has been prejudiced, has suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at Trial.

127. <u>Attorneys' Fees</u>: As a result of the acts by Defendants, and each of them, Plaintiff is entitled to damages as according to law, including attorney fees and costs, upon proof that Defendants and each of them is guilty of recklessness, oppression, fraud, or malice in the commission of elder abuse in an amount that will be shown as according to proof at the time of trial.

128. <u>Pain and Suffering</u>: Plaintiff also seek to recover damages for their physical pain, mental suffering and emotional distress resulting from the egregious conduct of Defendants as discussed in detail herein above.

129. <u>Punitive Damages</u>: Defendants are guilty of oppression, fraud and malice. "Malice" is defined in the statute as conduct "intended by the Defendants to cause injury to plaintiff, or despicable conduct that is carried on by the Defendants with a willful and conscious disregard for the rights or safety of others." In this case, it is clear that Defendants engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff by engaging in the above-referenced acts of elder abuse. Further, Defendants engaged in despicable and vile conduct as alleges in detail throughout this complaint and cause of action. "Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." In this case Defendants subjected Plaintiff to cruel and unjust hardship as detailed throughout the allegations of the Verified Complaint and this cause of action. Such egregious conduct was to the benefit of Defendants

EXHIBIT "1"
62 of 118

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

and resulted in cruel and unjust hardship to Plaintiffs. "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury." It is clear by this thoroughly pleaded cause of action that Defendants engaged in fraud and elder abuse and thereby unnecessarily forced Plaintiff into the foreclosure process to the benefit of Defendants. The aforementioned behavior exhibited by the Defendants as discussed in detail throughout this cause of action was despicable, vile, outrageous, and outside the bounds of human decency, sufficient to justify an award of exemplary and punitive damages.

## SIXTEENTH CAUSE OF ACTION
### QUIET TITLE
**(Against All Defendants)**

130. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

131. Plaintiffs' Lawful Ownership of SUBJECT PROPERTY: Plaintiff is the sole owners in fee simple of the SUBJECT PROPERTY. Please see legal description attached as *Exhibit A* to the Deed of Trust attached hereto as *Exhibit A.*

132. Tender: Please see Paragraph 14, hereinabove, which is incorporated herein by this reference.

133. Defendants Is Not a Third-Party Bona Fide Purchaser in Good Faith: Please see Paragraph 13 herein above, which is incorporated herein by this reference.

134. Illegally Conducted Trustee Sale: Plaintiff alleges that the trustee sale was conducted fraudulently and illegally as alleged in detail throughout this Complaint.

EXHIBIT "1"
63 of 118

DocuSign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

1   135. Defendants' Adverse Claim: Defendants claim an interest in the SUBJECT PROPERTY

2       that is averse to Plaintiffs' interest by operation of an invalid deed that was obtained

3       unlawfully, through fraud and deceit, and without Defendants acting as a bona fide third-

4       party purchaser of the SUBJECT PROPERTY in good faith, and for value. Defendants'

5       purported deed and/or any such resulting Trustee's Deed Upon Sale, is pursuant to fraud and

6       unlawful activity and, therefore, is void and without legal effect.

7   136. Quiet Title: Plaintiff seeks in this action to quiet title against the claim of Defendants, as

8       well as all other Defendants, as to the SUBJECT PROPERTY. The claims of Defendants

9       are without merit and through Defendants' own fraud, deceit, and substantial conduct

10      evidencing bad faith, and Defendants have no right, title, or interest whatsoever in the

11      SUBJECT PROPERTY, or any part thereof. Plaintiff seeks to quiet title in the SUBJECT

12      PROPERTY solely in the name of the Plaintiff, free and clear of any claimed interest by

13      Defendants and seeks to so quiet title as of the date of the commencement of this above-

14      captioned civil action.

15  137. Judicial Declaration: Plaintiff seeks a judicial declaration that the title to the SUBJECT

16      PROPERTY is vested in Plaintiff alone and that Defendants and each of them have no

17      interest, estate, right, title or interest in the SUBJECT PROPERTY and that Defendants,

18      their agents and assigns, be forever enjoined from asserting any estate, right title or interest

19      in the SUBJECT PROPERTY.

20
21
22                          **SEVENTEENTH CAUSE OF ACTION**
                                    **SLANDER OF TITLE**
23                                 **(Against All Defendants)**

24  138. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the

25      aforementioned Paragraphs as if fully set forth herein.

---

VERIFIED COMPLAINT
**61** OF **71**

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

139. <u>Recorded Documents</u>: Plaintiff alleges that Defendants harmed them by recording documents that cast doubt about Plaintiffs' ownership of the SUBJECT PROPERTY.

   a.  Specifically, Defendants recorded the following fraudulent documents:

      i.  A fraudulent NOD supported by a false declaration of compliance, which rendered the initiation of foreclosure defective.

      ii.  A NOTS recorded in reliance on the invalid NOD, falsely indicating that foreclosure proceedings had been lawfully and properly commenced.

      iii.  A fraudulent and invalid Trustee's Deed Upon Sale purporting to transfer title to the SUBJECT PROPERTY, thereby wrongfully casting doubt on Plaintiff's ownership.

140. <u>Public Record</u>: The invalid and fraudulent aforementioned documents became public record when recorded with the County Recorder.

141. <u>Invalid Documents:</u> The above-referenced recorded documents are invalid as discussed in Paragraphs 10, 47 and 55 hereinabove, the allegations of which are incorporated herein.

142. <u>Careless Disregard</u>: Defendants, inclusive and each of them, knew or should have known and acted with careless disregard that the above-referenced recorded documents were invalid as detailed throughout the allegations of this Verified Complaint.

143. <u>Defendants Knew or Should Have Known</u>: Defendants knew or should have recognized that someone else, including courts and law enforcement would rely on the false documents and wrongfully attempt to deprive Plaintiff of the SUBJECT PROPERTY including evicting or potentially evicting Plaintiff from the SUBJECT PROPERTY thereby causing Plaintiffs' substantial financial loss.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

144. <u>Substantial Factor</u>: Defendants' conduct in recording the above-referenced invalid documents was a substantial factor in causing Plaintiffs' harm.

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS §17200
### (Against All Defendants)

145. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

146. <u>Unfair Business Practices</u>: California Business & Professions Code §§ 17200, et seq. ("UCL"), prohibits acts of unfair business practices, which means and includes any "fraudulent business act or practice . . . "and conduct, which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

147. <u>Defendants' UCL Violations</u>: Defendants committed acts of unfair business practices as defined by *Business and Professions Code §17200*, by engaging in the following practices:

    a. Defendants made no effort to communicate with Plaintiff prior to initiating foreclosure activity and never advised him of his right to request an in-person or telephonic meeting within 14 days to address foreclosure-prevention alternatives. Had Plaintiff been informed of this right, he would have requested such a meeting to pursue available options. Defendants' failure to provide the required advisement and opportunity for meaningful discussion constitutes a direct violation of Cal. Civ. Code § 2923.5.

    b. Defendants recorded a Notice of Default on September 24, 2024, and later recorded and mailed a Notice of Trustee's Sale on February 27, 2025, while Plaintiff had active, complete loan modification applications and an unresolved appeal, in violation of Cal. Civ. Code § 2923.6.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

c. Defendants violated Cal. Civ. Code § 2923.7 by failing to provide Plaintiff with a meaningful, knowledgeable, or consistent Single Point of Contact. Instead, Defendants routed Plaintiff through automated systems, provided contradictory information, lost documents, and forced repeated resubmissions from 2022 through 2025.

d. Defendants violated Cal. Civ. Code § 2924.10 by failing to issue any written acknowledgment of Plaintiff's loan modification submissions within five business days of receipt, despite Plaintiff submitting documents repeatedly beginning in August 2022 and throughout 2023–2025.

e. Defendants violated Cal. Civ. Code § 2924.11 by continuing to impose fees, charges, and interest while Plaintiff's complete applications, trial plan payments, and appeal were pending—despite Plaintiff making all four trial payments from May through August 2025 exactly as instructed.

f. Defendants violated Cal. Civ. Code § 2924.17 by recording foreclosure documents without reviewing competent and reliable evidence about Plaintiff's loan status, modification submissions, or eligibility for foreclosure alternatives, and ultimately conducting a foreclosure sale without proper review, even though Plaintiff had active loss-mitigation efforts and a pending appeal.

g. Defendants repeatedly represented to Plaintiff that her application was incomplete or missing documentation that Plaintiff had already submitted multiple times, thereby delaying review and undermining her eligibility for foreclosure prevention.

h. Defendants proceeded with foreclosure, recording and executing documents that resulted in the wrongful trustee sale of the SUBJECT PROPERTY on October 15,

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

2025, without exercising reasonable diligence to ensure Plaintiff's eligibility for loan modification or accurately reviewing his loan status.

i. Defendants failed to exercise reasonable diligence in managing the SUBJECT LOAN and recorded foreclosure documents without ensuring that Plaintiff's information, account status, and application history were accurately reviewed, in violation of both the DOT and the statutory duty to act fairly in servicing and foreclosure proceedings.

148. Damages: The foregoing acts and practices have caused substantial harm to California Consumers. Plaintiff have been prejudiced, have suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at Trial.

149. Unjust Enrichment: By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge all profits.

150. Attorney's Fees: Plaintiff is entitled to attorney's fees pursuant to California Code of Civil Procedure § 1021.5. Under § 1021.5, Plaintiff may recover attorney's fees if: (1) this action "has resulted in the enforcement of an important right affecting the public interest"; (2) "a significant benefit" is "conferred on the general public or a large class of persons"; (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate"; and (4) the fees "should not in the interest of justice be paid out of the recovery, if any." Plaintiff is seeking to enforce important rights protecting consumers in the State of California from abusive foreclosure and eviction processes.

### NINETEENTH CAUSE OF ACTION
**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
*(Cal. Civ. Code §1788 et seq.)*

151. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

152. <u>Debtor Status</u>: Plaintiff is a "debtor" within the meaning of California Civil Code § 1788.2(h), as he is a natural person from whom Defendants sought to collect a debt that was due and owing, or alleged to be due and owing. The obligation arising from the SUBJECT LOAN constitutes a "consumer debt" under Civil Code § 1788.2(f), because it represents money, property, or its equivalent, due or alleged to be due from a natural person by reason of a consumer credit transaction incurred for personal, family, or household purposes. The Rosenthal Fair Debt Collection Practices Act ("RFDCPA") expressly provides that the term "consumer debt" includes a mortgage debt.

153. <u>Defendants Are Debt Collectors</u>: Defendants, and each of them, are "debt collectors" under Civil Code § 1788.2(c), because they regularly engage, directly or indirectly, in the collection of consumer debts, including by demanding payment, threatening foreclosure, transmitting loan communications, and attempting to enforce the SUBJECT LOAN. The RFDCPA expressly applies to mortgage servicers and original lenders when they engage in debt collection conduct.

154. <u>Unlawful Debt Collection Conduct</u>: A Rosenthal Act claim lies where a defendant has "violated one of the liability provisions of the RFDCPA," including the prohibition against "unfair or deceptive acts or practices in the collection of consumer debts." (Civil Code § 1788.1(b).) Pursuant to Civil Code §1788.17, Defendants were required to comply with the provisions of Sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. Defendants, and each of them, violated multiple such provisions by engaging in the following:

a. Defendants misrepresented the legal status of Plaintiff's debt by issuing an October 17, 2025 delinquency notice falsely stating that Plaintiff was past due from May through

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

August 2025, despite Plaintiff making all required trial payments during that period. Defendants also falsely represented that Plaintiff's only option to avoid foreclosure was to pay the "entire amount demanded," omitting Plaintiff's rights under the DOT and California law.

b. Defendants threatened and proceeded with foreclosure despite Plaintiff having a complete loan modification application and a pending appeal, in direct violation of Civil Code §§ 2923.6 and 2924.11. Defendants assured Plaintiff that the foreclosure sale was on hold, yet proceeded with the sale on October 15, 2025.

c. Defendants misrepresented that "final modification documents" had been mailed to Plaintiff in August and September 2025, when Plaintiff never received them. Defendants then used this false claim to deny the modification for "failure to return documents," thereby deceptively engineering a justification for foreclosure.

d. Defendants rejected Plaintiff's partial payments between June and August 2023, even though the DOT required that payments be accepted and applied to delinquent periodic amounts, thereby manufacturing an artificial default and using that default as leverage to continue foreclosure activity.

e. Defendants repeatedly misstated the status of Plaintiff's loan, including representing that his trial payments were not received or credited; asserting that his appeals or applications were incomplete when they were not; and recording foreclosure documents based on inaccurate or incomplete loan information.

f. Defendants recorded a Notice of Default and Notice of Trustee's Sale premised on false declarations of compliance and inaccurate delinquency information, thereby publicly

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

communicating false information about Plaintiff's alleged default status and exposing him to foreclosure and loss of property.

155. Reasonable Reliance and Resulting Harm: Plaintiff reasonably relied on Defendants' representations regarding the alleged delinquency, the status of his loan modification review, and Defendants' assurances that the foreclosure sale would not proceed while his appeal remained pending. In reliance on these statements, Plaintiff refrained from taking other timely remedial measures, including seeking immediate legal intervention or filing suit to stop the sale. Plaintiff's reasonable reliance on Defendants' misleading collection practices directly caused financial harm and ultimately resulted in the loss of the SUBJECT PROPERTY.

156. Damages: As a direct and proximate result of Defendants' wrongful foreclosure, Plaintiff have been prejudiced, have suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at Trial.

<div align="center">

**TWENTIETH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE, TO SET ASIDE TRUSTEE SALE**
**AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

</div>

157. Plaintiff re-alleges and incorporates by reference the general allegations set forth in the aforementioned Paragraphs as if fully set forth herein.

158. Wrongful Foreclosure: A claim for wrongful foreclosure arises when the lender, mortgagee or authorized agent fails to comply with the statutory provisions regulating non-judicial foreclosures in California and proceeds to conduct an invalid trustee sale of the SUBJECT PROPERTY.

159. Elements for Action for Damages: The elements of a common-law cause of action for damages for wrongful foreclosure are: (1) the trustee or mortgagee caused an illegal,

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

fraudulent or willfully oppressive sale of real property; (2) the sale was pursuant to a power of sale contained in a mortgage or deed of trust; and (3) the trustor or mortgagor sustained damages. *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7; see Witkin, Sum. Of Cal. Law (10th ed. 2005) Secured Transactions in Real Property, §168.)

160. Tender: Please see Paragraph 14 above, incorporated herein by this reference.

161. Violation: In this case, Defendants caused an illegal, fraudulent, and willfully oppressive transfer and conveyance of the SUBJECT PROPERTY pursuant to the power of sale contained in the DOT by engaging in the conduct detailed throughout this Complaint. Specifically, Defendants proceeded with the foreclosure of the SUBJECT PROPERTY despite failing to comply with essential statutory and contractual prerequisites, including failing to provide a valid Notice of Default, recording a fraudulent declaration of compliance, engaging in dual-tracking while Plaintiff's loan modification and appeal were pending, and misrepresenting that the foreclosure sale would be placed on hold. As a direct result of these invalid and unlawful acts, Defendants conducted a foreclosure sale that lacked legal authority, and Plaintiff ultimately lost the SUBJECT PROPERTY through a void and wrongful foreclosure. Despite their knowing failure to comply with the stringent statutory requirements governing non-judicial foreclosures in California and their intentional and fraudulent misrepresentations, Defendants and each of them, conducted an improper non-judicial foreclosure of the SUBJECT PROPERTY.

162. Damages: As a direct and proximate result of Defendants' wrongful foreclosure, Plaintiff have been prejudiced, have suffered, and will continue to suffer, general and special damages in a sum to be determined according to proof at Trial.

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

163. <u>Rescission of Sale and Injunctive Relief:</u> The hardship incurred by Plaintiff as a result of the foreclosure and sale is permanent and severe, as Plaintiff will have lost all equity in the SUBJECT PROPERTY as well as ownership of the SUBJECT PROPERTY, which is a unique parcel of real property; whereas the hardship incurred by Defendants, is transitory and minimal as the bottom line for Defendants is merely profit and has nothing to do with this unique property and said Defendants should be prevented from gaining from their wrongful conduct. Plaintiff is therefore entitled to have the trustee sale of the SUBJECT PROPERTY rescinded and to other equitable relief in the form of a temporary and permanent prohibitory injunction preventing Defendants from proceeding with further conveyances or transfers of the SUBJECT PROPERTY.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff having set forth the claims for relief against Defendants, respectfully pray that this Court grant the following relief against the Defendants:

1. For an order rescinding the invalid trustee sale of the SUBJECT PROPERTY and reverting title to the Plaintiff;

2. For an Order preventing Defendants and their successors, assigns, heirs, agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts: (i) offering or advertising the SUBJECT PROPERTY for sale; (ii) attempting to transfer title of the SUBJECT PROPERTY; and (iii) selling the SUBJECT PROPERTY to another party.

3. For a judgment quieting title in the SUBJECT PROPERTY finding that Plaintiff is the owner in fee simple thereof;

4. For a declaration of the rights of the parties relative to the SUBJECT PROPERTY;

Docusign Envelope ID: 4773F2E4-844D-4F78-AB88-65483F97C698

5. For general damages in a sum according to proof;

6. For compensatory and special damages, including consequential and incidental damages, in a sum according to proof;

7. For attorney's fees and costs;

8. For punitive damages;

9. For interest as allowed by law; and

10. For such other legal and equitable relief as this Court deems just and proper.

By: _____
EULALIO L. SALVE JR.
PLAINTIFF IN PRO PER

DATED: November 25, 2025

## VERIFICATION

I, EULALIO L. SALVE JR., am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleges on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

By: _____
EULALIO L. SALVE JR.
PLAINTIFF IN PRO PER

DATED: November 25, 2025

VERIFIED COMPLAINT
71 OF 71

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT A

EXHIBIT

CTC-WCG

24

Recording Requested By:
**GreenPoint Mortgage Funding, Inc.**
Return To:
**GreenPoint Mortgage Funding, Inc.**
**981 Airway Court, Suite E**
**Santa Rosa, CA 95403-2049**

Prepared By:
**GreenPoint Mortgage Funding, Inc.**
**100 Wood Hollow Drive,**
**Novato, CA 94945**

3800/608

RECORDING REQUESTED BY:
CHICAGO TITLE COMPANY

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0245490-00**
Acct 2- Chicago Title
Thursday, AUG 03, 2006 08:00:00
MIC    $1.00 MOD   $24.00 REC    $28.00
TCF   $23.00 DAF    $1.80 REF     $0.20
**Ttl Pd   $78.00**          Nbr-0003349746
                                       rrc/R2/1-24

─────────────[Space Above This Line For Recording Data]─────────────

# DEED OF TRUST

MIN 100013800901386116

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 27, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **Eulalio   Salve Jr, A Married Man**

Borrower's address is **1508 Cajon Court, Antioch, CA 94509**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **GreenPoint Mortgage Funding, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**

8611

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15

VMP MORTGAGE FORMS - (800)521-7291

38001608

245490

Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

**(D) "Trustee"** is **Marin Conveyancing Corp.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **July 27, 2006**
The Note states that Borrower owes Lender **four hundred twenty thousand and 00/100**
Dollars
(U.S. $ **420,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2036**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |
| [x] Occupancy Rider | [x] Interim Interest Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

8611

(MERS) -6A(CA) (0207)                     Page 2 of 15                     Form 3005    1/01

245490

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                    **County**              of              **Contra Costa**                    :
            [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
**Lot 619, map of Subdivision 3781, filed June 28, 1968, Map Book 121, page 34, Contra Costa County Records.**

Parcel ID Number: **076-171-014**                          which currently has the address of
**1508 Cajon Court**                                                                  [Street]
**Antioch**                                          [City], California **94509**        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

8611

-6A(CA) (0207)                    Page 3 of 15                          Form 3005  1/01

245490

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

8611

245490

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT "1"
80 of 118

245490

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

8611

 -6A(CA) (0207)                    Page 6 of 15                    Form 3005   1/01

EXHIBIT "1"
81 of 118

245490

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

8611

-6A(CA) (0207)                    Page 7 of 15                    Form 3006  1/01

245490

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

8611

-6A(CA) (0207)                  Page 8 of 15                  Form 3005   1/01

245490

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

8611

245490

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

8611

-6A(CA) (0207)                    Page 10 of 15                    Form 3005   1/01

245490

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

8611

245490

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

8611



245490

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

8611

-6A(CA) (0207)                    Page 13 of 15                    Form 3005  1/01

245490

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Eulalio Salve Jr              -Borrower


_____          _____ (Seal)
                                                                        -Borrower


_____ (Seal)           _____ (Seal)
                        -Borrower                                        -Borrower


_____ (Seal)           _____ (Seal)
                        -Borrower                                        -Borrower


_____ (Seal)           _____ (Seal)
                        -Borrower                                        -Borrower


                                                                   8611

-6A(CA) (0207)              Page 14 of 15              Form 3005   1/01

245490

State of California
County of *CONTRA COSTA*                      } ss.

On *28 JUL 06*          before me,  *EDWARD DIFLORIO II / Notary Public*
                                                        personally appeared

Eulalio Salve Jr

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

```
EDWARD DIFLORIO II
Commission # 1666225
Notary Public - California
Contra Costa County
My Comm. Expires May 12, 2010
```

8611

-6A(CA) (0207)          Page 15 of 15          Form 3005  1/01

EXHIBIT "1"
90 of 118

Escrow No.: 06-38001608-JV
Locate No.: CACTI7707-7707-2380-0038001608
Title No.: 06-38001608-PH

245490

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF ANTIOCH, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 619, map of Subdivision 3781, filed June 28, 1968, Map Book 121, page 34, Contra Costa County Records.

EXCEPTING THEREFROM:

1-Rights and mineral rights reserved in the deed from Standard Oil, recorded December 31, 1964, book 4774 Official Records, page 36, as follows:

"All oil, gas, asphaltum and other hydrocarbons and other minerals, whether similar to those herein specified or not, within or that may produced from said parcel, 500 feet in depth; provided, however, that the surface of said parcel shall never be used for the exploration, development, extraction, removal or storage of said oil, gas, asphaltum and other hydrocarbons and other minerals."

2-That portion thereof lying below a depth of 500 feet, measured vertically, from the surface thereof.

Apn: 076-171-019

Exhibit Page - Legal(exhibit)(8-02)

245490

# INTERIM INTEREST RIDER TO
## ADJUSTABLE RATE RIDER AND MORTGAGE, DEED OF TRUST OR
## DEED TO SECURE DEBT

This Rider is made this **27th** day of **July, 2006**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Rider (the "Rider") and the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date herewith, given by undersigned ("Borrower") to evidence Borrower's indebtedness to **GreenPoint Mortgage Funding, Inc.** its successors and assigns ("Lender") which indebtedness is secured by a Security Instrument and covering the property described in the Security Instrument and located at:

**1508 Cajon Court, Antioch, CA 94509**

Notwithstanding anything to the contrary set forth in the Note, Rider and Security Instrument, Lender and Borrower hereby acknowledge and agree to the following.

2.     **INTEREST**
       **(A)     Interest Rate**
       Interest will be charged on unpaid principal until the full amount of Principal has been paid.  Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) of the Note, I will pay interest at a yearly rate of **7.625%**.  Thereafter, I will pay interest at a yearly rate of **1.000%**, until the first Interest Change Date (as defined in Section 2(B) of the Note).

       The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

All other provisions of the Note, Rider and Security Instrument are unchanged by this Addendum and remain in full force and effect.

| | |
|---|---|
| _____ (Borrower) | _____ (Borrower) |
| Eulalio Salve Jr | : |
| _____ (Borrower) | _____ (Borrower) |
| _____ (Borrower) | _____ (Borrower) |
| _____ (Borrower) | _____ (Borrower) |

8611

EXHIBIT "1"
92 of 118

245490

# ADJUSTABLE RATE RIDER
## Monthly Treasury Average Index - Payment and Rate Caps

THIS ADJUSTABLE RATE RIDER is made this 27th   day of July, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
GreenPoint Mortgage Funding, Inc.

("Lender") of the same date and covering the property described in the Security Instrument
and located at: 1508 Cajon Court, Antioch, CA  94509

[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST
(A) Interest Rate
Interest will be charged on unpaid principal until the full amount of Principal has been
paid. I will pay interest at a yearly rate of              1.000 %. The interest rate I will pay
may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of this Note.
(B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of September, 2006                ,
and on that day every month thereafter. Each date on which my interest rate could change is
8611

TRAR-OB (06/06) GreenPoint Mortgage Funding, Inc.

Page 1 of 5

245490

called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**
My interest rate will never be greater than                    12.000 %.

**(D) Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding three and one-quarter percentage points ( 3.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

**3. PAYMENTS**
  **(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on September 1, 2006        . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 79363, City of Industry, CA 91716-9363
or at a different place if required by the Note Holder.

  **(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 1,350.89        .
This amount may change.

  **(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first day of September, 2007  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

8611

TRAR-OB (06/06) GreenPoint Mortgage Funding, Inc.

**245490**

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to 110% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

8611

TRAR-OB (08/08) GreenPoint Mortgage Funding, Inc.

Page 3 of 5

245490

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

8611

**TRAR-OB (06/06) GreenPoint Mortgage Funding, Inc.**

**Page 4 of 5**

245490

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
Eulalio Salve Jr            -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                             -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                             -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                             -Borrower                                        -Borrower


8611

TRAR-OB (06/06)  GreenPoint Mortgage Funding, Inc.

Page 6 of 6

245490

# OCCUPANCY RIDER TO MORTGAGE/ DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this 27th day of **July, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1508 Cajon Court, Antioch, CA  94509**

("Property Address")

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.  That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.
2.  That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:
    a.  increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or
    b.  charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or
    c.  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or
    d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or
    e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution. It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

8611

245490

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect.

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

_____ (Borrower)          _____ (Borrower)
Eulalio Salve Jr

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

**END OF DOCUMENT**

8611

Occupancy Rider to Mortgage/Deed of Trust/Security Deed
GreenPoint Mortgage Funding, Inc.                    Page 2 of 2                    H74670MU 09/05 Rev. 06/06



# EXHIBIT B

EXHIBIT

Not for Official Use : This copy has not been QUALITY ASSURED.

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING,
LLC

[AND WHEN RECORDED MAIL TO]
PHH Mortgage Corporation
C/O Nationwide Title Clearing, LLC 2100
Alt. 19 North
Palm Harbor, FL 34683

Loan Number 8010609090

Electronically Recorded
CONTRA COSTA Co Recorder Office
DEBORAH COOPER, Clerk-Recorder
**DOC - 2022-0102283**
Wednesday, Jun 22, 2022 09:11
SB2 Fee: $75.00
Total Paid: $95.00        Receipt #: 202200082099
16 - Nationwide Title Clearing        210 / CPPC / 1-2

*$R00007609723*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR),** (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer, and set over all of its rights, title, and interest in the described Deed of Trust, representation or warranty, including all liens and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR5, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **EULALIO SALVE JR,** and recorded on **08/03/2006** as **Doc # 2006-0245490-00**, in the office of the **CONTRA COSTA** County Recorder, **CALIFORNIA.**

Dated this 16 day of JUNE, 2022
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING INC., ITS SUCCESSORS AND ASSIGNS**

By: 

   **YANIQUE A ATKINSON EDWARDS**
   **ASSISTANT SECRETARY**

PHHPD 433001877 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) MIN 100013800901386116 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T152206-09:27:12 [C-2] FRMCA1

*D0095045178*

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Loan Number 8010609090

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PALM BEACH
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 16 day of JUNE, 2022, by **YANIQUE A ATKINSON EDWARDS** as **ASSISTANT SECRETARY** of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING INC., ITS SUCCESSORS AND ASSIGNS, who, as such **ASSISTANT SECRETARY** being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Notary Public - STATE OF FLORIDA        Benedicth Francois
Commission expires:    JUN 1 6 2024

Notary Public State of Florida
Benedicth Francois
My Commission HH 011075
Expires 08/18/2024

Document Prepared By: **YANIQUE A ATKINSON EDWARDS**, PHH Mortgage Corporation, a subsidiary of Ocwen Financial Corporation, 5720 Premier Park Drive West Palm Beach, FL 33407 800-210-8849
PHHPD 433001877 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) MIN 100013800901386116 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T152206-09:27:12 [C-2] FRMCA1

Not for Official Use : This copy has not been QUALITY ASSURED.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT C

EXHIBIT

Not for Official Use : This copy has not been QUALITY ASSURED

\* S R 0 0 0 1 2 4 4 9 1 6 S \*

TS No.: 2024-01460-CA

**RECORDING REQUESTED BY:**
Premium Title of California

**WHEN RECORDED MAIL TO:**
Western Progressive, LLC
7730 Market Center Ave, Suite 100
El Paso, TX 79912

TS No.: 2024-01460-CA

APN No.:076-171-014-4

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0093893**
Tuesday, Sep 24, 2024 11:48:00
SB2 Fee: $75.00

Total Paid: $101.00          Receipt #: 202400088871

10 - SimpliFile                              268 / LGPC / 1-4

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $ 19,739.10 as of 10/09/2024, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Version 1.1 CA NOD 0219                                      Page 1 of 3

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR5, By PHH Mortgage Corporation its attorney in-fact

C/O Western Progressive, LLC
7730 Market Center Ave, Suite 100
El Paso, TX 79912
Servicer Phone: 877-744-2506

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 07/27/2006, executed by, EULALIO SALVE JR, A MARRIED MAN, as Trustor, to secure certain obligations in favor of GREENPOINT MORTGAGE FUNDING, INC AS LENDER MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS BENEFICIARY., recorded 08/03/2006 , as Instrument No. 2006-0245490-00 , in Book ---, Page --- and further modified by that certain Loan Modification Agreement recorded on 10/02/2009, as Instrument Number 2009-0233646-00 and further modified by that certain Loan Modification Agreement recorded on 02/22/2011, as Instrument Number 2011-0038973-00, of Official Records in the Office of the Recorder of Contra Costa County, California describing land therein as: As more particularly described on said Deed of Trust.

Version 1.1 CA NOD 0219                                      Page 2 of 3

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

Street Address or other common designation of real property:

**1508 CAJON COURT, ANTIOCH, CA 94509**

The subject obligation includes ONE NOTE(S) FOR THE ORIGINAL sum of $ 420,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

Installment of Principal and Interest plus impounds and/or advances which became due on 05/01/2024 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

1.The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code §2923.5 and Civ. Code §2923.55. Thirty days, or more, have passed since the initial contact was made.

See attached Declaration.

Dated: September 23, 2024

Western Progressive, LLC, as Trustee for beneficiary

Saundra White, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

### California Declaration of Compliance
### (Civ. Code § 2923.5 and Civ. Code § 2923.55)

Borrower(s): EULALIO SALVE JR
Property Address: 1508 CAJON CT, ANTIOCH, CA 94509

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect one of the following.

☒ The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.5 and Civ. Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.5 and Civ. Code § 2923.55 to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐ The mortgage servicer was not required to comply with California Civil Code § 2923.5 and Civ. Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐ California Civil Code Section 2923.55 does not apply because the loan is not secured by a first lien mortgage or deed of trust on residential real property that meets the criteria in California Civil Code Section 2924.15(a)(1) ("owner occupied") or Section 2924.15 (a)(2) ("occupied by tenant").

Signed and Dated:

By: PHH Mortgage Corporation as Servicer for U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR5

| | | |
|---|---|---|
| Oscar Giraldo | /s/. *Oscar Giraldo* | September 16, 2024 |
| Print Name | Signature | Date |
| Contract Management Coordinator | | |

NOT for Official Use : THIS copy has not been QUALITY ASSURED.

EXHIBIT "1"
107 of 118



# EXHIBIT D

EXHIBIT

**Not for Official Use : This copy has not been QUALITY ASSURED**

TS No.: 2024-01460-CA

RECORDING REQUESTED BY
**Premium Title of California, Inc.**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**7730 Market Center Ave, Suite 100**
**El Paso, TX 79912\*\***

*$R00013395625$*

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2025-0018066**
Thursday, Feb 27, 2025 08:45:00
SB2 Fee: $75.00

Total Paid: $101.00          Receipt #: 202500018650
10 - SimpliFile                              230 / STPC / 1-4

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**T.S. No.: 2024-01460-CA**          A.P.N.:**076-171-014-4**
Property Address: **1508 CAJON COURT, ANTIOCH, CA 94509**

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/27/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **EULALIO SALVE JR, A MARRIED MAN**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **08/03/2006** as Instrument No. **2006-0245490-00** in book ---, page--- **and further modified by that certain Modification Agreement recorded on 10/02/2009, as Instrument No. 2009-0233646-00** of Official Records **and further modified by that certain Modification Agreement recorded on 02/22/2011,** as Instrument No. **2011-0038973-00** of Official Records in the office of the Recorder of **Contra Costa** County, California,
Date of Sale: **04/10/2025 at 01:30 PM**
  Place of Sale:    **AT THE NORTH SIDE OF THE PITTSBURG CIVIC CENTER NEAR THE GRASS LOCATED AT 65 CIVIC AVENUE, PITTSBURG, CA 94565**

**Estimated amount of unpaid balance, reasonably estimated costs and other charges: $ 522,187.30**

Version 1.3 CA NOS 0524                                          Page 1 of 4

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

# NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **1508 CAJON COURT, ANTIOCH, CA 94509**
A.P.N.: **076-171-014-4**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:
**$ 522,187.30.**

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

Version 1.3 CA NOS 0524                                                      Page 2 of 4

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(866)-960-8299** or visit this Internet Web site https://www.altisource.com/loginpage.aspx using the file number assigned to this case **2024-01460-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

EXHIBIT "1"
111 of 118

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction, if conducted after **January 1, 2021**, pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(866)-960-8299**, or visit this internet website https://www.altisource.com/loginpage.aspx, using the file number assigned to this case **2024-01460-CA** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than **15 days** after the trustee's sale. Third, you must submit a bid, by remitting the funds and affidavit described in Section 2924m(c) of the Civil Code, so that the trustee receives it no more than **45 days** after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**Western Progressive, LLC, as Trustee for beneficiary**
**C/o 1500 Palma Drive, Suite 238**
**Ventura, CA 93003**
**Sale Information Line:  (866) 960-8299**
https://www.altisource.com/loginpage.aspx

Date: February 25, 2025          _____
                                 **Mark Bombick, Trustee Sale Assistant**

**This address must be used for the required delivery by certified or overnight mail of postponement requests as specified pursuant to Civil Code section 2924f(e).

Not for Official Use : This copy has not been QUALITY ASSURED.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT E

26
27

EXHIBIT

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

RECORDING REQUESTED BY:
**Premium Title of California**

AND WHEN RECORDED TO:
**U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR GREENPOINT
MORTGAGE FUNDING TRUST MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2006-AR5**
**C/o PHH Mortgage Corporation**
**Attention: Trailing Docs**
**5720 Premier Park Drive**
**West Palm Beach**
**FL- 33407**

**Forward Tax Statements to
the address given above**



Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2025-0125494**
Thursday, Nov 6, 2025 11:58:00
SB2 Fee: $75.00

Total Paid: $104.00        Receipt #: 202500113641

10 - SimpliFile                             210 / CPPC / 1-5

SPACE ABOVE LINE FOR RECORDER'S USE

TS No.: 2024-01460-CA                    Order No.: TSG2409-CA-3894223

## TRUSTEE'S DEED UPON SALE

A.P.N.: **076-171-014-4**              Transfer Tax: **$0.00**

THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND
TAXATION CODE, SECTION 11926

The Grantee Herein was the Foreclosing Beneficiary.
The undersigned grantor declares under penalty of perjury
The Amount of the Unpaid Debt was **$529,690.25**
The Amount Paid by the Grantee was **$529,690.25**
Said Property is in the City of **ANTIOCH**, County of **Contra Costa**

**Western Progressive, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT MORTGAGE
FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR5**

Version 1.1 CA TDUS 0419                                    Page 1 of 4

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## TRUSTEE'S DEED UPON SALE

**Order No.: TSG2409-CA-3894223**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Contra Costa**, State of California, described as follows:

LOT 619, MAP OF SUBDIVISION 3781, FILED JUNE 28, 1968, MAP BOOK 121, PAGE 34, CONTRA COSTA COUNTY RECORDS.

EXCEPTING THEREFROM:

1 - RIGHTS AND MINERAL RIGHTS RESERVED IN THE DEED FROM STANDARD OIL, RECORDED DECEMBER 31, 1964, BOOK 4774 OFFICIAL RECORDS, PAGE 36, AS FOLLOWS:

" ALL OIL, GAS, ASPHALTUM, AND OTHER HYDROCARBONS AND OTHER MINERALS, WHETHER SIMILAR TO THOSE HEREIN SPECIFIED OR NOT, WITHIN OR THAT MAY BE PRODUCED FROM SAID PARCEL, 500 FEET IN DEPTH; PROVIDED, HOWEVER, THAT THE SURFACE OF SAID PARCEL SHALL NEVER BE USED FOR THE EXPLORATION, DEVELOPMENT, EXTRACTION, REMOVAL OR STORAGE OF SAID OIL, GAS, ASPHALTUM AND OTHER HYDROCARBONS AND OTHER MINERALS.

2 - THAT PORTION THEREOF LYING BELOW A DEPTH OF 500 FEET, MEASURED VERTICALLY, FROM THE SURFACE THEREOF.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by, **EULALIO SALVE JR, A MARRIED MAN** as Trustor, dated 07/27/2006, recorded on 08/03/2006, Instrument Number 2006-0245490-00, of the Official Records in the office of the Recorder of **Contra Costa**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default or the posting and mailing of copies of the Notice of Sale or the publication of a copy thereof.

Version 1.1 CA TDUS 0419

Page 2 of 4

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## TRUSTEE'S DEED UPON SALE

**Order No.: TSG2409-CA-3894223**

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **10/15/2025** to said Grantee, being the highest bidder at said sale for the amount bid, being **$529,690.25** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

Date: **November 5, 2025**          Western Progressive, LLC

By: _____

Delia Madrid,    **Trustee Sale Assistant**

STATE OF Georgia
COUNTY OF Fulton

On _____ before me, _____ Personally appeared _____who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*see attached*

WITNESS my hand and official seal.

_____
Notary Name                              (Seal)

**A copy of the affidavit or declaration in compliance with Civil Code section 2924m(d) is attached hereto as Exhibit A and incorporated herein as if set forth in full. Said Affidavit or declaration is required to be attached as an Exhibit to the Trustee's Deed and recorded pursuant to Civil Code section 2924m(d)**

Version 1.1 CA TDUS 0419                                        Page 3 of 4

EXHIBIT "1"
116 of 118

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

**EXHIBIT "A"**

**AFFIDAVIT UNDER CALIFORNIA CIVIL CODE §2924m(d)**

This instrument does not require an affidavit or declaration under California Civil Code §2924m(d) because the successful purchaser was the beneficiary of the deed of trust and is not covered under California Civil Code §2924m(d) and the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the Trustee's Deed Upon Sale

Version 1.1 CA TDUS 0419

Page 4 of 4

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No.: 2024-01460-CA

## CERTIFICATE OF ACKNOWLEDGMENT

The State of Texas

County of El Paso

Before me, Yosemite Lopez Campos, a Notary Public, on this day personally

appeared Delia Madrid, Trustee Sale Assistant, known to me (or proved to me on the

oath of _____ or through _____ (description of identity card or

other document) to be the person whose name is subscribed to the foregoing instrument and

acknowledged to me that he/she executed the same for the purposes and consideration therein

expressed.

Given under my hand and seal of office this 5 day of november, 2025.

(Seal)



YOSEMITE LOPEZ CAMPOS
NOTARY PUBLIC
ID# 13367433-5
In and for the State of Texas
My Commission Expires
03-29-2026

(Notary's Signature)
Notary Public, State of Texas

"This certificate is attached to a TRUSTEES DEED UPON SALE
(title or type of document), dated 11 5 25 , of 4 (number) pages, also signed by
Delia Madrid (name[s] of other signer[s] if any)."

Page 1 of 1